**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0398n.06
Filed: June 14, 2007

**No. 06-2039**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NELSON EDWARD ROBERTS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CORPORAL MANIGOLD, et al., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants; | ) | |
| | ) | |
| OFFICER STRICKLEN; CITY OF | ) | |
| BIRMINGHAM, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: SUTTON and COOK, Circuit Judges; and GWIN, District Judge.[*]

COOK, Circuit Judge. Officer Kate Stricklen and her employer, the City of Birmingham, Michigan, bring this *Johnson v. Jones*, 515 U.S. 304 (1995), interlocutory appeal following the district court's denial of qualified immunity from Nelson Roberts's excessive force claim. Agreeing with the district court that whether Stricklen violated Roberts's clearly established Fourth Amendment right to be free from excessive force turns on a disputed question of fact, we affirm and remand the case for further proceedings.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 06-2039
*Roberts v. Manigold*

I

Because this case comes to us after a denial of qualified immunity, we must construe the facts in the light most favorable to Roberts.[1] After spending the weekend with his children, Roberts brought them back to the house of his estranged wife, Corryl Parr, on a Sunday afternoon. Parr asked Roberts to make some repairs around the house, but Roberts refused and told her that he would help her another day. Parr became angry, and Roberts attempted to calm her by hugging her. She resisted, spit in his face, and hit him. She then picked up a phone to dial 911, but Roberts unplugged the phone from the wall, so Parr hit him with the phone. Roberts went downstairs to leave, and Parr used the downstairs phone to call the police as Roberts left the house.

After Roberts returned to his car, he attempted to call his divorce attorney, but could not reach him. Later that day, Roberts called Parr to make sure she was okay, but Officer Gina Potts answered the phone. Roberts told Potts that he wanted to make a statement, and Potts asked him to return to the house to do so. Roberts returned to the house to find Potts with two other officers, Kate Stricklen and Phillip Webb, waiting for him. Roberts felt threatened by the officers and attempted to keep his distance from them. Roberts then felt his cell phone ring, and, thinking his lawyer might be calling, retrieved it from his coat pocket and answered it. As he answered his phone, he kept walking backward until, fearing for his safety, he turned and ran.

---

[1]The veracity of this version of the facts is, of course, a jury question.

The officers chased him, and Stricklen pulled out her taser[2] and attempted to use it on Roberts. Roberts felt the initial shock, pulled a prong of the taser out of his back, and continued to run. After Roberts fell face-down into a snow bank, Webb, a 225-pound former running back at the University of Michigan, pinned him by holding his leg on top of Roberts's back. Webb grabbed Roberts's arm to try to handcuff him, and Roberts continually cried out for help. Although Webb had Roberts completely pinned, Stricklen repeatedly used her taser on Roberts. Stricklen did not wait for Webb to get Roberts under control before she used her taser on him, and Webb admits that he would have been able to subdue Roberts without Stricklen's assistance. The officers then took Roberts into custody.

Roberts was tried on a domestic violence charge, but the jury acquitted him.[3] Roberts then sued the City and Officers Stricklen, Webb, and Potts for excessive force under 42 U.S.C. § 1983 and several state-law causes of action. The district court ordered Officers Webb and Potts dismissed from the case with prejudice and dismissed one of the state-law claims—conspiracy—but did not rule on the other claims.

---

[2]A taser is an electroshock weapon. It has two metallic prongs attached to two 22-foot cables, which the officer shoots at the suspect to immobilize him. Once the cables have been discharged, the officer can still use the taser to drive stun the suspect. Drive stunning a suspect temporarily disrupts his muscle control by giving him a brief but strong electrical shock.

[3]Roberts makes much of this acquittal, arguing that the jury "held" that "Roberts did not assault his wife." All we glean from his acquittal, however, is that the prosecution did not prove the elements of assault beyond a reasonable doubt.

The district court also denied the defendants' summary judgment motion "for the reasons set forth on the record." On the record, the district judge stated that he found "that [the reasonableness of the force used is] a question of fact; that there's a well-recognized constitutional right to be free from excessive force; that the Plaintiff's testimony, when taken in the light most favorable to the Plaintiff, presents a question of fact for the jury as to whether or not the second taser was appropriate or excessive." Stricklen and the City of Birmingham appealed.

II

The Supreme Court characterizes a district court's denial of qualified immunity as a final appealable order to the extent that order turns on legal issues. *Johnson v. Jones*, 515 U.S. at 310-12. A "denial of qualified immunity on purely legal grounds is immediately appealable. A denial of qualified immunity that turns on evidentiary issues is not." *Turner v. Scott*, 119 F.3d 425, 427 (6th Cir. 1997) (internal citation omitted). A district court's statement that there exists a genuine issue of material fact for trial does not, however, divest this court of jurisdiction to entertain an interlocutory appeal of the denial of the qualified immunity aspect of that decision. *See Livermore v. Lubelan*, 476 F.3d 397, 402-03 (6th Cir. 2007) (citing *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc)). We have jurisdiction to review de novo the district court's decision, crediting Roberts's account of the incident, that qualified immunity does not shield Stricklen from trial. If we agree with the district court that under Roberts's version of the facts, Stricklen could be denied qualified immunity, our interlocutory jurisdiction ends and a jury must decide which version of the facts prevails.

When reviewing a motion for summary judgment, we neither "make credibility determinations [nor] weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). We instead "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Baker v. City of Hamilton*, 471 F.3d 601, 603 (6th Cir. 2006) (quoting *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001)).

III

The Supreme Court instructs courts to use a two-step inquiry to decide whether a defendant is entitled to qualified immunity. *See Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). First, did the defendants' conduct violate a constitutional right held by the plaintiff? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if so, was the violated right clearly established at the time of the violation? *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Judging Roberts's excessive force claims "under the Fourth Amendment's 'objective reasonableness' standard," *Brosseau*, 543 U.S. at 197, and viewing the facts in the light most favorable to him, we decide whether Stricklen's repeated use of her taser on him was objectively unreasonable. Our assessment of Fourth Amendment unreasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

The facts and circumstances of other recent excessive force cases guide our inquiry. "[T]he gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Bultema v. Benzie County*, 146 F. App'x 28, 35 (6th Cir. 2005); *see also, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-01 (6th Cir. 2004) (agreeing with the police officers' concession that it was excessive for them to "lay on top of Champion, a mentally retarded individual who had stopped resisting arrest and posed no flight risk, and spray[] him with pepper spray even after he was immobilized by handcuffs and a hobbling device"); *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (conceding for analytical purposes that an officer's "use of pepper spray [on a suspect actively resisting arrest] might be . . . excessive force under *Graham*"); *Adams*, 31 F.3d at 384 (6th Cir. 1994) (holding that even if the "plaintiff pushed or struck [the defendant] as alleged by the police, there is still a contested issue of material fact in regard to whether spraying mace in defendant's face after he returned to the car constituted excessive force"); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line . . . .").

In this case, Roberts claims that Stricklen needlessly used an electroshock weapon on him. Though the events Roberts described took place over a very short period of time, a reasonable jury

could find that Stricklen used unnecessary and gratuitous (and thus excessive) force in violation of Roberts's clearly established Fourth Amendment right.[4]  Having rejected Stricklen's qualified immunity appeal, we do not retain jurisdiction over the pendent nonappealable issues raised by the defendants.  *McKenna v. City of Royal Oak*, 469 F.3d 559, 562-63 (6th Cir. 2006).

IV

Viewing the facts in the light most favorable to Roberts, a reasonable jury might conclude that Stricklen used excessive force.  She is not entitled to qualified immunity as a matter of law at this point in the proceedings.  We affirm and remand the case for further proceedings.

---

[4]The defendants cite three cases to show that the use of the taser in this case was reasonable.  *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993); *Francis v. Pike County*, 875 F.2d 863 (6th Cir. 1989) (unpublished).  None of these cases concern tasering as gratuitous force, but rather only the use of tasers in tense situations.  The type of weapon used is not the issue; the excessiveness of the force is the Fourth Amendment inquiry.