NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0125n.06

No. 08-2543

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RONALD SCHMALFELDT, )
)
    Plaintiff-Appellee, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
JASON ROE, ) WESTERN DISTRICT OF MICHIGAN
)
    Defendant-Appellant. )

Before: BATCHELDER, Chief Circuit Judge; DAUGHTREY, Circuit Judge; VAN TATENHOVE,[*] District Judge.

**MARTHA CRAIG DAUGHTREY**, Circuit Judge. Defendant Jason Roe, a member of the Coloma Township (Michigan) Police Department, appeals from an order of the district court denying him qualified immunity at the summary judgment stage, in this civil-rights action filed by plaintiff Ronald Schmalfeldt pursuant to 42 U.S.C. §§ 1983 and 1988. Roe, along with three other local police officers, arrested Schmalfeldt at his home on a charge of domestic violence. During the arrest, Roe twice used his Taser[1] on Schmalfeldt,

---

[*]The Honorable Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]A Taser is an electroshock weapon with two metallic prongs attached to two 22-foot cables, which the officer shoots at a suspect to immobilize him. After the prongs have been discharged, the officer can continue to shock the suspect. *Roberts v. Manigold*, 240 Fed. Appx. 675, 676 n.2 (6th Cir. 2007).

prompting Schmalfeldt to bring this suit alleging use of excessive force. Roe invoked

qualified immunity as his defense, which the district court rejected, concluding that

"genuine issues of material fact preclude[d] summary judgment."

Noting that "[a]lthough the underlying facts [we]re in dispute, the general course of

events [wa]s not," the district court summarized the factual record as follows:

> When the police officers entered the plaintiff's residence, they spoke with
> plaintiff and his girlfriend, [Kathleen Gross,] who had been arguing. Both
> plaintiff and [Gross] had apparent physical injuries. Plaintiff appeared to be
> highly intoxicated. Defendant decided to arrest plaintiff, who was seated at
> the dining room table. When plaintiff failed to respond to defendant's
> instructions during the course of the arrest, defendant deployed his Taser
> weapon, and plaintiff fell to the floor. When plaintiff failed to comply with
> defendant's further instructions to roll over on his stomach and place his
> hands behind his back, defendant deployed the Taser a second time,
> incapacitating plaintiff, whereupon plaintiff was handcuffed and taken into
> custody.

The defendant maintained that it was necessary to use the Taser against

Schmalfeldt because he was resisting arrest. Schmalfeldt, however, explained that he had

not followed the officer's orders immediately because he did not understand why he was

being arrested, given the fact that he was the one who had called the police to ask that

Gross be removed from his house due to her violent behavior. Schmalfeldt also said that

the officers remained at least four feet away from where he was sitting in a confined area

eating dinner and that they made no physical contact with him before Roe suddenly, and

without any warning, deployed the Taser against him. Schmalfeldt was knocked to the

floor, where he landed on his back. Ordered to roll over onto his stomach, Schmalfeldt

said he was unable to comply because he could not move. Nevertheless, Roe shocked Schmalfeldt again. He was then forcibly pulled up from the floor, handcuffed, and removed from the house. At some point during this encounter, a tendon in Schmalfeldt's right arm detached from his biceps muscle.

Schmalfeldt was ultimately charged with "resisting and obstructing an officer" and domestic violence. He pleaded guilty to lesser-included charges and eventually initiated this litigation. Schmalfeldt contends that Roe's repeated use of the Taser – when Schmalfeldt was unarmed, offered no resistance, and was cornered by four police officers so that he obviously had no means of escape – was objectively unreasonable and constituted excessive force.

On appeal, the defendant purports to concede the plaintiff's version of the facts as "undisputed" in order to provide a basis upon which to let us validate his claim that he is entitled to qualified immunity. But this concession is illusory, as it turns out, because Roe puts the dispositive facts into dispute, contending that Schmalfeldt physically resisted when an officer grabbed his arm and then became physically aggressive and threatening towards the officers, thus requiring use of the Taser.

The district court concluded that "[w]hether the force used to take plaintiff into custody was objectively reasonable under the totality of the circumstances requires a resolution of the disputed facts," one that "depends in large part on matters of credibility and the weight accorded the evidence." Hence, as the district court held, "the issue of

qualified immunity cannot be determined as a matter of law." The court added that "[e]ven allowing for the fact that police officers are required to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving, the facts of this case involve too close a call to decide the ultimate question of a constitutional violation as a matter of law." We agree.

Furthermore, the existence of disputed fact in this case works to deprive us of authority to hear this appeal, based on the Supreme Court's ruling in *Johnson v. Jones*, 515 U.S. 305 (1995). There, the Court held that a defendant entitled to raise qualified immunity as a defense may not appeal a district court's summary judgment order denying qualified immunity if the pretrial record is "sufficient to show a genuine issue of fact for trial." *Id.* at 307. Noting that interlocutory appeals such as this one are an exception to the requirement of a "final judgment" under 28 U.S.C. § 1291, *id*. at 309, the Court reasoned that jurisdiction to review the denial of qualified immunity is available only "to the extent that it turns on an issue of law." *Id.* at 313 (emphasis and internal quotation marks omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

There is no discrete issue of law before us. We have precedents stretching back at least to 1994 indicating that spraying a suspect with mace – then the equivalent of later-developed pepper sprays and electroshock devices – can amount to excessive force if used unreasonably against a non-resisting suspect. *See Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Thus, liability in this case turns on a credibility determination with

regard to the police officer's assertion of the need to exert force against the plaintiff of the kind and to the extent used here. The question clearly is one for a jury and not for the district court.

Because there is no legal issue for review in this case and because the question of qualified immunity turns, as the district court determined, on genuine issues of disputed material fact, under *Johnson* we have no jurisdiction to entertain an interlocutory appeal, and this one must, therefore, be DISMISSED.