NORRIS, Circuit Judge,
dissenting.
The majority paints a compelling picture of a softly spoken driver offering “polite responses to the officers’ questions about his physical incapacity to move from his stationary vehicle” who was nevertheless tased by defendant officers.
In painting this picture, the majority avers, as it should, that it is construing the facts in the light most favorable to plaintiff. However, this case is unusual two respects: first, the entire sequence of events was caught on the police cruiser’s dashboard camera; and, second, plaintiff concedes that he has no recollection of the events. When uncontroverted video evidence is available, we should view “the facts in the light depicted by the video tape.” Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011) (“Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from the video recordings taken at the scene.”). Because the majority relies upon facts contradicted by the clear video evidence, I respectfully dissent.
As the majority notes, when a suspect is not actively resisting police efforts to apprehend him, there is a clearly established right to be free from the use of physical force. Hagans v. Franklin Cnty. Sheriffs Office, 695 F.3d 505, 509 (6th Cir.2012) (summarizing cases from 2004 onwards in which “the suspects were compliant or had stopped resisting” and noting that excessive force was found in such cases). That maxim is true, but it is equally well-settled that the right to make an arrest “necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Having reviewed the video tape of the encounter between plaintiff and the officers numerous times, the events captured strike me as a fairly routine arrest of an uncooperative driver whom the officers had reason to suspect *537 was under the influence of alcohol.[1] In the course of their encounter he refused to comply with repeated, reasonable police commands and physically resisted the officers’ efforts to remove him from his vehicle.
The majority believes that plaintiff was attempting to comply with the officers’ commands but was physically incapable of doing so. In my view, this conclusion is belied by the video evidence. Two average-sized male police officers could undoubtedly have helped the driver from his pickup truck unless he was resisting those efforts. Instead, the video tape shows the officers asking plaintiff to step out of his truck at least a dozen times. The tone of these requests gradually escalated from calm to insistent, and, finally, culminated in threats to use force (including a warning that they would tase him if he continued to resist). Rather than comply, plaintiff answered several times with “I’m fine.” When they attempted to pull him from the truck, the video tape shows him clutching the steering wheel and bracing his legs (the brake lights flare as the officers try to pull him out of the truck). In short, plaintiff was actively and physically resisting.
The majority states that force is only justifiable in the face of “active resistance, some outward manifestation — either verbal or physical — on the part of the suspect [suggesting] volitional and conscious defiance.” As just recounted, plaintiff showed just such defiance. Other than a few expletives used in the heat of the moment, the officers conducted themselves in a reasonable and professional manner. I am unable to discern anything remotely resembling a violation of plaintiffs constitutional rights.
Unfortunately, the majority’s opinion offers little guidance to officers confronting a similar situation in the future. Given the failed efforts initially to remove plaintiff from the truck, what should have happened next? The officers had immobilized the truck; should they have left him in it and waited for him to sober up (based on their reasonable assumption that he was under the influence of drugs or alcohol)? Ironically, such a strategy could have resulted in permanent brain damage or even death had plaintiffs low blood sugar persisted or worsened. See Philip E. Cryer, Hypoglycemia, Functional Brain Failure, and Brain Death, 117 J. Clinical Investigation 868, 868-69 (2007), available at http:// www.ncbi.nlm.nih.gov/pmc/articles/PMC 1838950/.
Instead, the officers deployed their Ta-ser and it worked as designed. After the shock, plaintiff immediately came out of the truck and, though it took both officers, they quickly gained control of him without injury to anyone. Plaintiff continued to resist as the officers struggled to handcuff him, and they ultimately abandoned efforts to get his wrists in position to be cuffed, instead fastening two sets of cuffs together to increase the length.[2] The moment he was fully immobilized and cuffed, the officers respectfully helped plaintiff, whom *538 they referred to as “sir,” get to his feet and sat him on the front of their cruiser. When they discovered plaintiffs insulin pump, they immediately summoned medical personnel who promptly treated his hypoglycemia. If the majority insists that this response constituted a constitutional violation, it would be helpful to provide some guidance to future officers confronting similar situations.
To illustrate how far the majority has reached here, it is instructive to dig a little deeper into the cases referenced by the majority as comparable precedents where officers used excessive force against suspects offering no resistance.
For example, in Kijowski v. City of Niles, 372 Fed.Appx. 595 (6th Cir.2010), Kijowski was a wedding guest sitting in his truck talking on his phone, and not disobeying police commands. Id. at 600-01. Officers dragged him from his truck, smashed his phone, and tased and kicked him. Id. at 597. In Landis v. Baker, 297 Fed.Appx. 453 (6th Cir.2008), officers used excessive force in tasing a suspect pinned to the ground, with officers on his back forcing his head under muddy water. Id. at 457-58. The suspect aspirated water, mud, and leaves, and ultimately died as a result of drowning. Id. at 458. In Roberts v. Manigold, 240 Fed.Appx. 675 (6th Cir.2007), an officer used excessive force in tasing a suspect repeatedly after the suspect was “completely pinned” on the ground. Id. at 676. Lastly, in a case about pepper spray rather than a Taser, officers used excessive force when they doused a suspect in pepper spray and applied asphyxiating pressure after he was fully immobilized with handcuffs and leg shackles, and had stopped resisting. Champion v. Outlook Nashville, Inc., 380 F.3d 893, 897 (6th Cir.2004). The suspect subsequently died from cardiac arrest. Id. at 898.
In my view, these cases are all factually distinguishable from the conduct of the officers here. To suggest that this line of cases put the officers on notice that their use of force against plaintiff would violate his clearly established constitutional rights is simply untenable.
For these reasons, I would REVERSE the district court’s denial of the defendants’ motion for summary judgment based on qualified immunity.

. Only in hindsight is this an unusual case because plaintiff was not intoxicated but experiencing hypoglycemia, the symptoms of which can mimic intoxication. See, e.g., Padula v. Leimbach, 656 F.3d 595, 601 (7th Cir.2011). In reviewing claims for excessive force, a court must review the encounter based on what the officer saw without the benefit of hindsight. Caie v. W. Bloomfield Twp., 485 Fed.Appx. 92, 95 (6th Cir.2012).

. Interestingly, some of the cases cited by the majority suggest that if the officers had tased plaintiff for resisting being handcuffed, such a use of force would have been constitutionally permissible. See, e.g., Caie, 485 Fed.Appx. 92 at 96; Williams v. Sandel, 433 Fed.Appx. 353, 361 (6th Cir.2011); Williams v. Ingham, 373 Fed.Appx. 542, 548 (6th Cir.2010).