SUHRHEINRICH, J.,
dissenting.
Generally, a defendant may not appeal a denial of qualified immunity if the issue on interlocutory appeal raises a genuine factual dispute. Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). And of course, in making that determination, we view all facts in the nonmovant’s favor. There is an exception, however, “[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no rea *479 sonable jury could believe it.” Scott v. Harris, 550 U.S. 372, 878, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The exception most commonly applies where the record contains a videotape depicting the genuinely disputed facts and contradicting one party’s version of events. See id, In such a scenario, the court must view the facts “in the light depicted by the videotape.” Id. at 380, 127 S.Ct. 1769. The court must draw reasonable inferences in favor of the nonmoving party from the video recording, but only “to the extent supportable by the record,’1 Id. at 381 n. 8, 127 S.Ct. 1769. Once this occurs, the reasonableness of the defendant officer’s actions “is a pure question of law.” Id.
In my view, the video “utterly discredits” the district court’s conclusion that there are genuine issues of fact about whether: (1) Rowlery was compliant with the officers’ commands, and (2) Winston, with the help of the other defendants, punched Rowlery after he had been handcuffed. Thus, I believe that we have interlocutory appellate jurisdiction to reverse the district court’s denial of summary judgment on the basis of qualified immunity. See Scott, 550 U.S. at 380, 127 S.Ct. 1769; Clay v. Emmi, 797 F.3d 364, 368 (6th Cir.2015); Romo v. Largen, 723 F.3d 670, 674 n. 3 (6th Cir.2013). For this reason I respectfully dissent.
The Supreme Court recently ruled that objective reasonableness is the standard we apply in assessing the force used against a pretrial detainee and reminded courts that the standard is not to be applied “mechanically,” but must be based on the “facts and circumstances of each particular case.’” Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The court is to make this assessment “from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.” Id. The court must also consider the legitimate interests in managing a jail, “acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.” Id. at 2474.
When I view the video and the undisputed testimony through this legal lens, and in the light most favorable to Rowlery to the extent supported by the record, it is clear to me that the officers in this case did not use excessive force in taking down Rowlery and could not have delivered any kind of blow that could plausibly be characterized as a punch.
Rowlery testified in his deposition that Winston told him two times that he wasn’t being released and ordered, “Give me your coat, you’re going back in your cell.” ID#657. Rowlery then- testified that Winston accused him of “refusing to comply” with Winston’s order to hand over his coat, ordered Rowlery to “[g]et down on the floor,” grabbed Rowlery and threw him against the wall and forced him to the ground before Rowlery could comply. ID# 658.
The video reveals that there is more to the story. As the majority acknowledges, the video shows Winston gesture toward a nearby cell with an open door. Video at 18:37:1818:37:33. Winston pointed toward the cell several more times, but Rowlery remains standing still. He also did not hand his jacket to Winston, but eventually took it off and threw it on the floor. He did not enter the cell. Id. at 18:37:36-18:37:45. Winston gestured toward the cell again with his arm, but Rowlery did not go into the cell. Id. at 18:37:45-18:37:50. To my mind, the foregoing behavior demonstrated “active resistance— *480 on the part of [Rowlery] [suggesting] volitional and conscious defiance.” Eldridge v. City of Warren, 533 Fed.Appx. 529, 533-34 (6th Cir.2013),
The question becomes: what were the officers supposed to do now? It seems to me that Winston did what any reasonable officer would do when facing a pretrial detainee (especially one who is 6'4" and 280 lbs.) refusing to follow orders to return to his cell in the cell area hallway — Winston attempted to restrain Rowlery by grabbing his arm and pinning him against the wall. Video at 18:37:52-18:37:56. The other deputies stepped in to assist and forced Rowlery face-down onto the floor, in order to handcuff him, in a struggle that lasted about thirty seconds.’ Id. at 18:37:57-18:38:27.
The district court and the majority sense possible “foul play” because the video does not show obvious signs of Rowlery “pushing back” or “tightening up” on the officers after Winston grabbed Rowlery’s arm. But the video recording demonstrates that Rowlery was not cooperating with Winston’s instructions in the seconds leading up to the moment Rowlery allegedly yielded to Winston’s touch. In other words, contrary to Rowlery’s assertions and the district court’s findings, the video unequivocally demonstrates that Rowlery was not complying with Winston’s commands. And even if Rowlery indeed became compliant after Winston touched him, or after the officers took him to the ground, it was not objectively unreasonable for the officers to distrust Rowlery’s sudden change of heart and opt to restrain him anyway as a precaution to protect not only themselves, but to maintain security within the jail cell area. Cf. Goodrich v. Everett, 193 Fed.Appx. 551, 556 (6th Cir.2006) (holding that physical tackling of the plaintiff, who was suspected of a violent crime, admittedly disobeyed police orders, and evaded police officers, was not excessive force because a reasonable officer could have concluded that the plaintiffs actions in walking towards the police station entrance were “at best ambiguous” and would not have .known that the plaintiff had become compliant during the take-down because he did not clearly communicate his compliance to the officers). In short, when the events in question are analyzed under the proper test — under the totality of the circumstances facing the defendant officers — the takedown was objectively reasonable. Although Rowlery is protected from the use of excessive force that amounts to punishment, Leary v. Livingston County, 528 F.3d 438, 443 (6th Cir.2008) (citing Graham, 490 U.S. at 395 n. 10, 109 S.Ct. 1865), it is equally true that that “[i]n effecting a seizure, law enforcement agents are authorized to use ‘some degree of physical coercion’ without violating the Fourth Amendment.” Goodrich, 193 Fed.Appx. at 555 (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).
This brings us to the question of the degree of force used. See Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763, 776 (6th Cir.2004) (noting that force used must “not be unconstitutionally disproportionate in degree to the circumstances”). As the majority notes, the video shows that the defendant officers were holding Rowlery down by his shoulders and feet. It also shows that they did not “kick” and “beat” or “strike” Rowlery, let alone “pummel” him, as he claimed, but simply tried to hold him down until he could be handcuffed. And the whole struggle lasted no more than thirty seconds. Although the crime Rowlery committed was not serious and he was not attempting to flee, Rowlery, at 6'4" and 280 lbs., potentially posed a threat to the officers and the jail security, see Graham, 490 U.S. at 396, 109 S.Ct. 1865 (discussing factors to assess in objective reasonableness inquiry), and quantum of *481 force used in trying to handcuff him was not disproportionate to his act of defiance. See Goodrich, 193 Fed.Appx. at 556 (holding that the plaintiff failed to create fact question the shoving, kneeing, and kicking that occurred during his handcuffing was excessive force because the plaintiff did not “allege a level of force or brutality that a reasonable officer would consider excessive”); cf. Malory v. Whiting, 489 Fed.Appx. 78, 83-84 (6th Cir.2012) (officers used excessive force on the plaintiff where his offense was nonviolent and he was compliant during transport to police station but refused to sign his full name to a property form and put his belt on his shoulder when ordered to take off his clothing and in response one officer slammed arrestee to the ground and drove his knee into his temple, and another officer stepped on arrestee’s knee and punched him in the ribs); Kijowski v. City of Niles, 372 Fed.Appx. 595, 600-01 (6th Cir.2010) (officers used excessive force on the plaintiff, a wedding guest sitting in his truck talking on his phone and not disobeying police commands, when they dragged him from his truck, smashed his phone, tased him, and kicked him); Landis v. Baker, 297 Fed.Appx. 453, 457-58 (6th Cir.2008) (officers used excessive force when they tased a suspect pinned to the ground with officers on his back forcing his head under muddy water); Roberts v. Manigold, 240 Fed.Appx. 675, 676 (6th Cir.2007) (officer used excessive force when he tased a suspect repeatedly after he was “completely pinned” on the ground).
As to the alleged “punch,” the majority acknowledges that the video does not show Winston punching Rowlery. Although not every movement is perfectly perceptible because the officers were gathered around Winston and Rowlery during the take-down, there is no movement that necessarily accompanies a sharp thrust or a blow detectable from either camera angle. The video shows no one retracting their arm in preparation to deliver a blow. The thirteen stitcheá do not prove the punch either, because it is not surprising that Rowler/s forehead made contact with the ground during the takedown.
In short, the video, along with Rowler/s own admissions, viewed in totality of all the circumstances, renders Rowlery’s version of the story, which attempts to portray a cooperative pretrial detainee as the victim of brute physical force by defendants, a “visible fiction.” Scott, 550 U.S. at 381,127 S.Ct. 1769.
For these reasons, I would reverse the judgment of the district court and grant summary judgment to the defendant officers.