In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 25-1617

JERREL PEREZ and J.P., a minor,

*Plaintiffs-Appellees,*

*v.*

SHAWN GUETSCHOW,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 23-cv-153-pp — **Pamela Pepper**, *Chief Judge.*

_____

ARGUED NOVEMBER 13, 2025 — DECIDED APRIL 20, 2026

_____

Before EASTERBROOK, LEE, and MALDONADO, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A fight in a school's cafeteria has led to this appeal from an order denying a motion for summary judgment based on qualified immunity. 2025 U.S. Dist. LEXIS 43547 (E.D. Wis. Mar. 11, 2025). One important principle governing such appeals is that our role is limited to applying clearly established rules of law. Any material dispute about the facts is for the district judge and, if necessary,

a jury. Resolving a factual contest is outside the scope of pre-trial appellate jurisdiction. Compare *Johnson v. Jones*, 515 U.S. 304 (1995), with *Plumhoff v. Rickard*, 572 U.S. 765 (2014). We must decide whether this appeal presents a legal or a factual question.

In 2022 Shawn Guetschow, a police officer in Kenosha, Wisconsin, had a second job as a security officer at Kenosha Unified School District. On March 4 he was called to the cafeteria, where two sixth-grade students, L.M. and J.P., were having a confrontation. (The pleadings and district court's opinion refer to J.P. as "Jane Doe," but Fed. R. Civ. P. 5.2(a)(3) calls for the use of initials.) Closed circuit TV shows that, within a span of 44 seconds, Guetschow took J.P. to the ground, knelt at least briefly on her neck, and placed her in handcuffs. She contends in this suit under 42 U.S.C. §1983 that Guetschow used excessive force, in violation of the Fourth Amendment (applied to the states by the Fourteenth). The district court denied Guetschow's motion for summary judgment, and he immediately appealed. (The district court's opinion resolved some issues concerning other parties, but the appeal concerns Guetschow alone.)

Plaintiffs' principal argument is that Guetschow applied substantial force after J.P. had stopped struggling. Guetschow concedes that this would have been improper but maintains that J.P. continued to resist his effort to bring her under control. Guetschow asserts that he tried to apply a "three-point stabilization technique" that would have ended the confrontation painlessly, had it succeeded—but it didn't because (as Guetschow concedes) the technique was used improperly (which is why he landed with his knee and body weight on J.P.'s neck). He calls this an error; plaintiffs see a deliberate

use of excessive force. The record includes the evidence of a police chief, testifying for plaintiffs as an expert witness, that the circumstances justified the three-point technique but that Guetschow went about it "completely wrong". The chief thought that what happened turned into a chokehold. That would be excessive force, but Guetschow denies that this is the proper characterization of what occurred.

> The district judge summed up:

> The parties agree that Guetschow took Doe from a standing position to a prone position on the ground. They agree that Guetschow placed his knee on the back of Doe's neck. They genuinely disagree over just about every other fact material to the excessive force determination. They disagree about "any effort made by the officer to temper or limit the amount of force"—in other words, whether Guetschow had the opportunity to do anything that would have prevented the fight, or whether anything he might have had time to do would have headed it off. They disagree about the "severity of the security problem at issue"—whether Doe "softly pushed" LM or whether the fight was "very violent." They disagree about the need for the use of force—again, whether the fight was "violent," as well as whether Doe was resisting. They disagree about whether the "threat" was "reasonably perceived" by Guetschow. They disagree about "the amount of force used"—whether Guetschow pushed Doe's head into the floor, impeded her breathing or had his knee to her neck with force and for how long. They even disagree on the extent of the plaintiff's injury. … The material facts surrounding the excessive force claim are rife with genuine disputes; in most instances, that ends the summary judgment discussion and requires the court to start discussing trial dates.

2025 U.S. Dist. LEXIS 43547 at *30–31. But Guetschow insists that this appeal remains all about the law, rather than the facts, because indisputable video evidence resolves all of these factual issues. On this subject the district judge wrote:

> One video shows that Doe was flailing when Guetschow inter-
> vened in the fight and that she continued to do so for a few mo-
> ments after Guetschow took her to the ground. Only one of the
> videos shows both Guetschow and Doe at the moment when
> Guetschow placed his knee on Doe's neck, the point at which the
> plaintiffs claim that Doe was not resisting and that the defendants
> assert that she was. Doe was prone for several seconds before
> Guetschow placed his knee on her neck. But it appears that Doe
> may have lifted her head immediately prior to Guetschow placing
> his knee on her neck. It isn't clear from the video whether Doe was
> resisting or not at the time Guetschow applied the force to her
> neck. And Guetschow gave deposition testimony that the place-
> ment of his knee on Doe's neck rather than her back was acci-
> dental and that he immediately moved his knee when he realized
> it was out of position. This is not remotely a case where the sur-
> veillance camera footage is so clear that it "blatantly contradicts"
> one party or another's version of events. A factfinder will have to
> resolve the factual disputes raised by the footage, the testimony
> and the other evidence. A reasonable factfinder could conclude
> that Doe was not resisting, or that if she was, the force used by
> Guetschow was not reasonable under the totality of the circum-
> stances.

*Id*. at *31–32 (cleaned up).

Video evidence that conclusively shows what happened allows a court to set aside factual disputes and decide what clearly established rules of law govern. See *Scott v. Harris*, 550 U.S. 372, 380 (2007). But cameras may be pointed in the wrong direction, miss vital details, or produce grainy images. It isn't the *existence* of a video recording, but its *quality*, that enables a court to conclude without a trial that one side rather than another must be right about the facts. See *Raddant v. Douglas County*, 170 F.4th 583, 590–92 (7th Cir. 2026); *Steinhoff v. Malovrh*, 170 F.4th 647, 653–54 (7th Cir. 2026). The videos on which Guetschow relies do not capture all of the action and are pixelated, which obscures some details. We concur in the

district judge's conclusion that they do not conclusively show when J.P. stopped struggling or whether Guetschow kept his knee on her neck after she had surrendered.

Only a trial will reveal what happened—and until then it is impossible to know whether Guetschow transgressed clearly established rules of law.

The appeal is dismissed for want of jurisdiction.