NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1149
_____

DONELL L. PRINCE

v.

SGT. THOMAS AIELLOS, badge #221, individually and as
police officer in Police Department, City of Hackensack;
DET. W. INGLIMA, individually and as police officer in
Police Department, City of Hackensack;
DET. A. GUTIERREZ, individually and as police officer in
Police Department, City of Hackensack;
DET. A. FERRAOILI, individually and as police officer
in Police Department, City of Hackensack;
LT. LEE, Nurse, individually and as police officer in
Police Department, City of Hackensack;
LT. PLUNKETT, individually and as police officer in
Police Department, City of Hackensack; OFFICER C. TOOMEY,
individually and as police officer in Police Department, City of Hackensack;
OFFICER T. GERVASI, badge #218, individually and as police officer
in Police Department, City of Hackensack; OFFICER J. GERVASI, B.C.I.
Division, individually and as police officer in Police Department,
City of Hackensack; SGT. A. TREZZA, badge #242, individually and as
police officer in Police Department, City of Hackensack; CAPTAIN WALSH,
Internal Affairs, individually and as police officer in Police Department,
City of Hackensack; HACKENSACK POLICE DEPARTMENT;
JOHN DOE MEMBER(S) OF HACKENSACK POLICE DEPARTMENT;
COURT ADMINISTRATOR JANICE BEHNKE, individually and as member
of Hackensack Municipal Court Staff; ELIZABETH P., Deputy Court Administrator,
individually and as member of Hackensack Municipal Court Staff;
BERGEN COUNTY JAIL IN CITY OF HACKENSACK;
JOHN DOE MEMBER(S) OF BERGEN COUNTY JAIL STAFF,
individually and as members of Bergen County Jail;
E. SCHIFFMAN, M.D. Resident in Psychiatry, Bergen Regional Medical Center;
FORENSIC PSYCHIATRY UNIT D1, part of Bergen County Jail, individually

and as member of Bergen Regional Medical Center and/or Bergen County Jail Staff;
BERGEN REGIONAL MEDICAL CENTER; JOHN DOE MEMBERS
BERGEN REGIONAL MEDICAL CENTER STAFF; E. FAHEY, MA.,
manager/Psychiatric Screener of Care Plus New Jersey Inc.,
individually and as member of Care Plus New Jersey Inc. Staff;
CARE PLUS NEW JERSEY INC; BERGEN COUNTY PROSECUTOR;
ATTORNEY GENERAL STATE OF NEW JERSEY; JOHN DOE MEMBER(S)
OF N.J. ATTORNEY GENERAL STAFF; CITY OF HACKENSACK

Sgt. Thomas Aiellos,
Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-05429)
District Judge:  Honorable Jose L. Linares

———————

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2014

Before:  CHAGARES, HARDIMAN and SHWARTZ, *Circuit Judges*.

(Filed:  December 2, 2014)

———————

OPINION*

———————

HARDIMAN, *Circuit Judge*.

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Thomas Aiellos filed this interlocutory appeal from an order of the District Court denying his motion for summary judgment. We will affirm.

I

On the night of May 23, 2005, Aiellos, then a sergeant with the Hackensack Police Department, was on patrol with his partner when they spotted a wanted man. The two chased the man onto the grounds of an apartment building, where they lost him. While searching the area, Aiellos noticed that the door to the apartment of Appellee Donell Prince was ajar. At this point, the parties' versions of the facts diverge sharply.

According to Aiellos, he knocked on the door and announced that he was a police officer before he set foot in Prince's apartment. At that point, Prince opened the door and immediately pointed a handgun at him. Aiellos says Prince acted "paranoid and odd" and had to be coaxed to put the weapon down. Returning to the police station later that night, Aiellos claims he spoke with his supervisor, who told him to arrest Prince and file a criminal complaint against him for aggravated assault/threatening a police officer and possessing a weapon for an unlawful purpose. Aiellos returned to Prince's apartment the following night with several officers, arrested Prince, took him to the police station, and subsequently filed a criminal complaint against him. Aiellos says he later learned that Prince had been taken to a nearby hospital for a psychiatric evaluation because of his behavior while in custody.

According to Prince, there was neither a knock on the door nor an announcement of police presence; there was simply an illegal entry. Prince says he was sitting in his apartment that night working on an appeal in another lawsuit against the City of Hackensack and its police department when several officers, including Aiellos, barged in "causing a [sic] incident and creating a very dangerous situation for all concerned." App. 176. Prince then grabbed his legally-owned handgun to protect himself and never pointed it at or displayed it in the direction of anyone. Prince claims he was bullied and threatened by the officers. Specifically, he says one of the officers threatened to arrest him if he did not "shut-up," and that Aiellos, in particular, told him that he "better stop thinking that people or [sic] out to get [him] before [he] find[s] out what someone out to really get [him] could do[.]" App. 176. The following night, according to Prince, Aiellos and several other officers returned and told him to come down to the police station to discuss what had happened the previous night, but they never arrested him or put him in handcuffs. Prince says that after he arrived at the station, he was placed in a cell for nineteen hours, during which time he was ridiculed and repeatedly told he was not under arrest and therefore had no right to a lawyer. Prince was charged with aggravated assault/threatening a police officer and possession of a weapon for unlawful purpose, but those charges were ultimately dismissed with prejudice in 2007.

After the charges against him were dismissed, Prince filed a pro se complaint against Aiellos and other members of the Hackensack Police Department. The only claim

4

remaining in this action is Prince's 42 U.S.C. § 1983 malicious prosecution claim against Aiellos. The parties filed cross-motions for summary judgment, which the District Court denied. Aiellos filed this interlocutory appeal claiming that he is entitled to qualified immunity.

II

Although our jurisdiction to review interlocutory orders denying qualified immunity is well established, we review only legal questions to determine whether the facts alleged support a violation of clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 528 & n.9 (1985). We have no power at this stage to review genuine disputes of fact or sufficiency of the evidence. *Johnson v. Jones*, 515 U.S. 304, 313, 319 (1995); *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002).

A

As the District Court noted, the crux of the parties' dispute at summary judgment was whether Prince could establish the following two elements of his malicious prosecution claim: whether Aiellos brought his criminal complaint against Prince without probable cause and whether Aiellos acted maliciously or for a purpose other than pursuing justice.

The District Court held that a genuine issue of material fact exists as to whether Aiellos brought a criminal complaint against Prince without probable cause. This conclusion is borne out by our brief review of the facts, which show that Prince and

5

Aiellos have offered irreconcilable versions of what occurred at the doorway of Prince's apartment on the night of May 23, 2005. As it was required to do in light of the procedural posture of the case, the District Court accepted as true Prince's version of the facts, namely, that Aiellos entered without knocking or announcing and that Prince grabbed a gun in self-defense and never pointed it at anyone.[1] The fact that Aiellos offered a very different version of the facts—and one that would well support a criminal complaint against Prince—is unavailing to Aiellos at this stage because the decision as to which version of the facts to believe is, as the District Court held, a task for the jury. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) ("Generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts." (internal citations and quotation marks omitted)).

Aiellos claims that the disputes over whether the police knocked and announced and whether Prince aimed the gun at him are immaterial to the issue of probable cause. In his view, the probable cause inquiry should turn instead on whether the totality of facts and circumstances known at the time were sufficient to warrant suspicion in the mind of a

---

[1] Under N.J. Stat. Ann. § 2C:12-1b(9), a person is guilty of aggravated assault if he "[k]nowingly, under circumstances manifesting extreme indifference to the value of human life, points or displays a firearm . . . at or in the direction of a law enforcement officer[.]" Under N.J. Stat. Ann. § 2C:39-4a(1), a person is guilty of possession of a weapon for an unlawful purpose if he "has in his possession any firearm with a purpose to use it unlawfully against the person or property of another[.]"

reasonable officer that Prince had committed, or was committing, an offense. *See* Aiellos Br. 19. Fair enough, but in order to determine whether the circumstances surrounding the encounter between Aiellos and Prince would have raised suspicion in the mind of a reasonable officer that Prince was committing aggravated assault or possessing a weapon for an unlawful purpose, we would need to answer the same question that is in dispute: did Aiellos and the officers barge in unannounced, causing Prince to grab his gun in self-defense; or did Prince recklessly aim a gun at Aiellos and the officers, even though they had announced themselves at the door? We have no jurisdiction to resolve this factual dispute in an interlocutory appeal. *See, e.g.*, *Johnson*, 515 U.S. at 313 (holding that a finding of genuine issue of fact was not a "final decision" and therefore not immediately appealable).

Aiellos also argues that the District Court erred as a matter of both law and fact in its interpretation of New Jersey's aggravated assault statute. Aiellos Br. 17–18. Aiellos contends that aggravated assault can be established not only by pointing a gun directly at a police officer, but also by displaying it in the general direction of that officer. *Id.* at 18; N.J. Stat. Ann. § 2C:12-1b(9); *see also supra* note 1. This wrongly assumes that there is no dispute that Prince displayed a gun at him. In fact, Prince alleged that he grabbed his gun, turned on the lights, and looked around the corner to see who was there. Prince did not admit, as Aiellos suggests, that he ever displayed the gun in the direction of another.

7

Here again, Aiellos mistakenly asks us to review the record in the light most favorable to him, not Prince.

B

Aiellos also argues that the District Court erred in holding that material facts remain in dispute as to whether he acted with the requisite malice. We disagree.

As the District Court noted, "malice" is defined as "the intentional doing of a wrongful act without just cause or excuse." *LoBiondo v. Schwartz*, 199 N.J. 62, 93–94 (2009) (internal quotation marks omitted). Malice can be inferred from "want of probable cause," provided the plaintiff "produce[s] at least some extrinsic evidence" of that malice. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 395–96 (2009) (internal quotation marks omitted). Having concluded that the District Court did not err in holding that material facts are in dispute regarding probable cause, it follows that malice on the part of Aiellos remains an open question.

Aiellos claims the record "unequivocally shows" that he did not act with malice in filing the criminal complaint and that this is demonstrated by the fact that the District Court failed to cite any evidence that he acted with malice. Aiellos points to his affidavit, which states he did not have or develop malice and did not know who Prince was at the time. He then criticizes Prince's affidavit for being too conclusory, and makes the formalistic argument that the District Court relied inappropriately on a section of Prince's affidavit that referenced the pleadings, and was therefore improper evidence. Yet again,

8

Aiellos's argument is based on his version of the facts in derogation of the contrary version offered by Prince.

## IV

For the reasons stated, we will affirm.