Heather OLSON, Plaintiff,

v.

Benjamin J. STEWART, in his official capacity as Sheriff, Madison County, Florida, and Jason Whitfield, in his individual capacity, Defendants.

CASE NO. 4:15cv571–RH/CAS

United States District Court,
N.D. Florida,
Tallahassee Division.

Signed March 8, 2017

Adam James Ellis, Marie A. Mattox, Marie A. Mattox PA, Tallahassee, FL, for Plaintiff.

John W. Jolly, Jr., Jolly & Peterson PA, Tallahassee, FL, for Defendants.

## ORDER ON THE MOTION TO STAY

Robert L. Hinkle, United States District Judge

The plaintiff asserts claims against two defendants. The case is ready for trial and can be resolved correctly, based on the actual facts, within six weeks. But one of the defendants has taken an interlocutory appeal. Both defendants have moved to delay the trial until after the appeal is resolved.

I

The events at issue took place in less than an hour at the home of the plaintiff, Heather Olson. Betty Fritz, who had been staying at the home, made a 911 call. She said there had been a family fight and that she wanted to get her clothes out of the house. Deputies from the Madison County Sheriff's Department responded. An argument, but not a fight, was in progress in the yard. Officers entered the home. The commotion awakened Ms. Olson, who had been sleeping in her bedroom.

Deputies observed red marks on Betty Fritz's daughter, Naomi Fritz. Naomi told the deputies her mother had given her the marks. One of the deputies, the defendant Jason Whitfield, mistakenly believed Ms. Olson was Naomi's mother. There was no basis for that belief. *See* ECF No. 33–3 at 18.

In an attempt to control the situation, the deputies ordered everyone out of the house. Ms. Olson was wearing the clothes in which she had been sleeping: a "little bitty pair of blue shorts" and a "tank top that's a bra." ECF No. 24–3 at 4. She got a shirt from her bedroom—she says a deputy told her she could do so—and went outside. A witness said Deputy Whitfield promptly "grabbed" Ms. Olson and "pushed her up against the wall," "slam-

ming" her around. ECF No. 33–3 at 9. The deputies dispute this.

Ms. Olson was not part of any fight and did not commit any act of domestic violence. ECF No. 33–1 at 4. Deputy Whitfield had no basis to believe otherwise. But he "detain[ed]" Ms. Olson for "suspicion of domestic violence," as well as for "[d]isorderly"—an abbreviated reference to disorderly conduct. Deputy Whitfield said the basis for the disorderly-conduct charge was disobeying his instruction "to be quiet." ECF No. 24–2 at 4. Ms. Olson has testified she did not disobey any order. ECF No. 33–1 at 4.

Another deputy, Edwin McMullen, said Ms. Olson did not commit the offense of disorderly conduct but should have been arrested for "domestic battery and obstruction of justice." ECF No. 33–8 at 8. Deputy McMullen said Naomi Fritz told him her mother—the person she had said left the marks on her—was the woman who went to get her shirt. ECF No. 33–8 at 7. But that is disputed and makes no sense; Ms. Fritz surely knows that Ms. Olson is not her mother.

Neither Deputy Whitfield nor any other officer said a reason for Ms. Olson's arrest was her failure to go outside quickly enough in response to the directive to do so.

The State Attorney filed a single charge against Ms. Olson: disorderly conduct. The State Attorney later dropped the charge, concluding there was "insufficient evidence to prove the crime beyond a reasonable doubt." ECF No. 24–1.

II

Ms. Olson filed this action against the Sheriff of Madison County in his official capacity and against Deputy Whitfield in his individual capacity. Ms. Olson asserted federal and state claims that arose from

three actions: (1) the entry into the home, (2) the arrest, and (3) the use of force.

After the close of discovery, the defendants moved for summary judgment on all claims. After a hearing, a ruling was announced from the bench granting the summary-judgment motion in part.

Summary judgment was granted for the defendants on the federal and state claims arising from the entry into the home, because the entry was lawful.

Summary judgment was granted for the Sheriff on the federal claims arising from the arrest and use of force, because a sheriff in his official capacity, like a city, is liable for an officer's constitutional violation only if the violation was based on a policy or custom or if the officer was one whose edicts or acts could fairly be said to represent official policy. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Ms. Olson's evidence did not meet this standard.

This left pending the state-law claims against both defendants based on the arrest and use of force and the federal claims against Deputy Whitfield based on the arrest and use of force. The parties were allowed to file additional materials on these issues. After review of those materials, together with the entire record, summary judgment on the remaining issues was denied. Trial was set for April 2017.

Deputy Whitfield filed a notice of appeal, and both defendants moved to stay further proceedings pending resolution of the appeal. Ms. Olson consents to the stay.

### III

In the federal system, interlocutory appeals are disfavored. Appellate review is usually best deferred until after the whole case is decided. This conserves judicial resources, allowing a court of appeals to deal with a case just once. It also avoids undue delay while a case bounces up and down between the district court and the court of appeals. Some would say the system also accords a measure of respect to a district judge, allowing the judge to manage the case and get it resolved correctly on the merits—subject at that point to plenary review on appeal.

But alas, there are exceptions. One is for orders rejecting a claim of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 527–28, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Even so, a defendant does *not* have a right to appeal every denial of qualified immunity or to stay all proceedings while such an appeal goes forward. Both the Supreme Court and the Eleventh Circuit have squarely held that an order denying qualified immunity is *not* immediately appealable if the only issue is whether the district court has properly construed the record. *See Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ("[A] district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial ... is not appealable"); *Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000) (holding that a district court's denial of qualified immunity is immediately appealable only if it "present[s] a legal question concerning a clearly established federal right *that can be decided apart from considering sufficiency of the evidence relative to the correctness of the plaintiff's alleged facts* (emphasis added)).

This case is indistinguishable from *Johnson* and *Koch*. Deputy Whitfield's appeal should be dismissed for lack of jurisdiction.

To be sure, a well-represented defendant can always attempt to frame the issue as a legal one and thus can attempt to avoid the limitation on immediate appeals. And so here, if Deputy Whitfield gives

only lip service to the requirement to view the record in the light most favorable to Ms. Olson as the nonmoving party, he can assert that there was no clearly established law showing that this arrest was improper. If Deputy Whitfield ignores some of the testimony, he can assert that he used only force that is proper to effect a lawful arrest.

But no framing of the issues can change the basis of the ruling in this case. The record, when properly construed in the light most favorable to Ms. Olson, shows the following. First, neither Deputy Whitfield nor any other deputy had any information at all suggesting that Ms. Olson committed any act of domestic violence. Second, Ms. Olson did not disobey the deputies' instruction to go outside. Third, Ms. Olson did not disobey any instruction to be quiet. Deputy Whitfield had no basis to believe otherwise.

If those are the facts, there was no basis to arrest Ms. Olson. A homeowner cannot be arrested just because someone else committed a domestic battery on the property while the homeowner slept. A homeowner cannot be arrested for disobeying an order if, as the arresting officer knows, she did not disobey an order. And if there is no basis for an arrest, there is no basis to use force to make an arrest.

Deputy Whitfield can attempt to frame the issue on appeal as a legal one, but it is not. I well understand that the deputies' instruction to go outside, or any other instruction designed to control the situation or assist in an investigation, was a lawful command. I well understand that if Ms. Olson disobeyed any such command, her arrest was proper. I well understand that an officer can use force to effect an arrest. But if there is no basis for an arrest, using force of the kind described here can be a constitutional violation.

This appeal raises only the issue of whether I have properly construed the record. This is not and should not be an immediately appealable issue.

### IV

Deciding whether any appeal should be dismissed is of course the province of the Eleventh Circuit, not of this court. The Eleventh Circuit will not rule on its jurisdiction prior to the trial date. So the stay issue must be addressed while the appeal is pending.

██ Deputy Whitfield says he has an absolute right to a stay pending appeal. That is not so. Three factors cut against granting a stay, and one cuts in favor.

### A

First, the case is ready for trial. If the case is not stayed, the factual disputes will be tried to a jury within six weeks. The jury will be properly instructed. The jury will determine the actual facts; the jury will not be required to accept as true one side's version. At that point, we will know whether Ms. Olson complied with the deputies' instructions, as she says, or disobeyed a deputy's instruction, as the defendants say. As a practical matter, it is likely that the verdict will settle the matter and that the Eleventh Circuit will never have to deal with the case at all. That is what happens in most cases of this kind that are tried in this court without interruption by an interlocutory appeal.

### B

Second, if the case is stayed pending appeal, then no matter which side wins the appeal, it is likely that the case will still have to be tried. This is so because there are state-law claims against the Sheriff for which there is no qualified-immunity defense.

If the case is stayed and the Eleventh Circuit eventually resolves the appeal for

1255

Ms. Olson, nothing related to the merits will have changed. The trial that goes forward on remand (a year or more in the future) will be precisely the same as the trial that could take place in six weeks. The one thing that will have changed is the cost of the litigation—the defendants will have paid much more in fees, and Ms. Olson's attorney will have a much larger contingent fee claim.

If, on the other hand, the case is stayed and the Eleventh Circuit resolves the appeal for Deputy Whitfield based only on qualified immunity—the issue that purportedly justifies the appeal—the claims against the Sheriff will still have to be tried. The trial will be identical to the trial that could take place in six weeks. All the same witnesses will testify, and the jury will resolve the same factual disputes. The damages issues will be the same. The only change will be that Ms. Olson will be unable to recover attorney's fees if she wins.

To be sure, the Eleventh Circuit could resolve the appeal for Deputy Whitfield on the basis that the arrest and use of force were not unconstitutional—not just on the basis of qualified immunity. If, as is likely, any such ruling also controlled the state-law issues, this would end the case. Note, though, that the justification for an immediate appeal is the purported need for a prompt ruling on the issue of qualified immunity, not on the underlying constitutional issue. Allowing an interlocutory appeal so that the underlying constitutional issue can be resolved makes no more sense here than in any other kind of federal case.

■ Indeed, allowing an interlocutory appeal so that the underlying constitutional issue can be resolved runs afoul of an even more important principle: federal courts should decide constitutional issues only when necessary to resolve an actual dispute. *See generally Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345–46, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (setting out fundamental principles of constitutional adjudication, including that, "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it'") (quoting earlier authorities in part); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."), *quoted with approval in United States v. $242,484.00*, 318 F.3d 1240, 1242 n.2 (11th Cir. 2003). This principle counsels against unnecessarily resolving constitutional disputes on hypothetical facts—"facts" determined by artificially resolving disputes in favor of the nonmoving party. If the case is not stayed, in six weeks we will know the actual facts, and if appellate review is still needed at all, the Eleventh Circuit will address any constitutional issues on the actual facts.

C

■ The purported justification for an immediate appeal of any order denying qualified immunity is the need to protect an individual public officer from remaining in a case—and thus having his personal assets at risk—longer than necessary. Qualified immunity is immunity from suit, not just immunity from liability.

The purported justification misses the mark here for two reasons. First, the appeal, even if successful, will keep Deputy Whitfield in the case longer; the appeal will not get him out of the case sooner. Second, Deputy Whitfield's personal assets are only superficially at risk. He has coverage for these claims from the same fund that covers the Sheriff. As a practical matter, Deputy Whitfield has no skin in the game.

Deputy Whitfield is represented by the same attorney who represents the Sheriff. There is no separation—not a single ray of light—between the interests of the Sheriff and Deputy Whitfield. The law allows interlocutory appeals in qualified-immunity cases in some circumstances, and Deputy Whitfield is entitled to assert that this appeal qualifies. The Sheriff, though, is entitled neither to appeal nor to insist that the claims against him be delayed.

## D

That brings us to the one factor that cuts in favor of a stay. The defendants have asked for it, and Ms. Olson has consented. In the past, the Eleventh Circuit has accepted jurisdiction in most qualified-immunity appeals. Denying a consented motion to stay at this point would do more harm than good, because the attorneys would have to prepare for a trial while seeking a stay in the Eleventh Circuit. The circuit might well grant a stay shortly before the trial. Trying cases is difficult enough without that kind of last-minute confusion.

As a matter of discretion, and with considerable misgivings, I conclude that the balance favors granting a stay.

## V

This is a case study on how not to run a railroad.

In the federal judiciary, we generally do an excellent job of resolving disputes correctly in accordance with the law—when we finally get around to resolving them. But the process takes too long and costs too much. We bemoan the disappearing trial, but we adopt procedures that cause delays and increase costs, making it harder and harder to actually resolve factual disputes through trials.

This case is an illustration. The case is ready for trial and could be resolved correctly, based on the actual facts, within six weeks. Instead, the case will now be delayed, probably for a year or more, awaiting an appellate ruling on hypothetical facts. The appellate ruling, if it ultimately makes any difference at all, probably will affect only the issue of attorney's fees, not resolution of the underlying dispute on the merits. This will happen based on the demonstrably false assertion that it will more quickly exonerate a party who has no skin in the game. As I said, a case study on how not to run a railroad.

The events at issue occurred in less than an hour on December 8, 2012. Ms. Olson filed suit nearly three years later, on November 22, 2015. The case is finally ready for trial. There is no good reason for further delay. But the circumstances have conspired against good case management.

## VI

For these reasons,

IT IS ORDERED:

The defendants' motion to stay, ECF No. 46, is granted. All proceedings are stayed pending resolution of the appeal.

SO ORDERED on March 8, 2017.