**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0586n.06

Case No. 14-3009

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 01, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JACOB E. RAGSDALE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JOSEPH SIDOTI, | ) | OHIO |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| CITY OF AKRON, OHIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: GIBBONS, SUTTON and WHITE, Circuit Judges.

SUTTON, Circuit Judge. After a violent argument with his brother, Jacob Ragsdale was shot by an Akron police officer. The question is how this happened. Ragsdale's account suggests the police used constitutionally excessive force. The officer's account tells a different story. In view of the dueling testimony and in view of the reality that Ragsdale gets the benefit of all reasonable factual inferences at this stage of the case, the district court rejected the officer's motion for qualified immunity. We affirm.

Jacob Ragsdale and his brother Lloyd Provitt got into a spat over a three-dollar debt. What seemed like a trivial dispute soon escalated. Ragsdale retreated into his girlfriend's house, but Provitt kicked in the back door. Ragsdale ran upstairs to grab a gun he kept for protection,

after which he fired a warning shot from the top of the staircase into the wall below. Back outside, Provitt called the police. Akron Police Officers Joseph Sidoti and Christopher Seiler soon arrived. Armed with his AR-15 assault rifle, Officer Sidoti approached the house from the backyard.

The parties dispute what happened next. According to Ragsdale, he took one step out of the side door while holding his gun and was immediately shot in the elbow by Officer Sidoti. Sidoti, Ragsdale says, gave no commands prior to firing. After being hit, Ragsdale dropped the gun and bolted up his neighbor's driveway, dodging a barrage of bullets.

Officer Sidoti tells a different story. After Ragsdale exited the house, Sidoti says he overheard Officer Seiler's command to Ragsdale to drop his weapon. Next thing Sidoti knew, Ragsdale was running toward him in the dark, holding what seemed to be a gun. Sidoti quickly turned on the light mounted on his rifle, at which point he saw a gun's wooden stock rising up to Ragsdale's shoulder area. Believing Ragsdale was preparing to fire, Sidoti shot first to defend himself, fourteen rounds in all. Officer Seiler found Ragsdale sitting against Boring's garage, wounded, and Sidoti radioed for an ambulance. Ragsdale's rifle was nearby, leaning against the neighboring dog kennel.

Ragsdale sued Officer Sidoti, alleging that the officer used constitutionally excessive force in violation of the Fourth (and Fourteenth) Amendment. *See* 42 U.S.C. § 1983. Officer Sidoti moved for summary judgment, asserting qualified immunity as a defense. The district court denied the motion. Judge David Dowd identified several lingering material facts, including: (1) whether Ragsdale was threatening Officer Sidoti with his gun; (2) where Ragsdale was standing when he was shot; (3) whether the officers gave any verbal commands before the shooting; (4) where Officer Sidoti was located when he fired; (5) how Ragsdale was holding his

weapon when confronted; and (6) whether the officer used his flashlight before firing. Officer Sidoti appealed.

Two sets of principles guide the resolution of this case. The first concerns the standard for granting qualified immunity to a police officer in the face of a § 1983 action. The standard requires us to consider two questions: Did the officer violate the claimant's constitutional rights, and if so were those rights "clearly established" at the time of the incident? *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Only if the claimant can satisfactorily answer both inquiries may he obtain relief. The second set of principles concerns the standard for granting summary judgment. Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Unless no reasonable jury could find in Ragsdale's favor, we must reject the officer's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We give fresh review to the district court's application of these principles. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

Consistent with the district court's decision, a reasonable jury could find that Officer Sidoti violated Ragsdale's Fourth Amendment right to be free from an unreasonable seizure involving potentially lethal force. *See Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). Ragsdale testified that, without warning, he was immediately shot as he exited his girlfriend's house, and that he was not holding his gun as he fled from Sidoti's gunfire because he had dropped the weapon right after being hit. Nor is the forensic evidence in favor of the officer so overwhelming that no reasonable jury could believe Ragsdale's account. Ballistics expert Richard Ernest, it is true, concluded that empty cartridges, bullet holes and shrapnel suggest that Ragsdale was not where he says he was when Officer Sidoti fired and suggest that Ragsdale did

not drop his gun. But as Ernest acknowledged, his reconstruction of the shooting is one reasonable approximation of what happened; it is not the only reasonable approximation of what happened. Assuming as we must on summary judgment that Ragsdale is telling the truth, we must conclude that Ragsdale has created a material issue of fact about whether Officer Sidoti's actions amounted to objectively unreasonable force. *See id.*

Ragsdale also satisfies step two of the qualified immunity inquiry. *Garner* clearly establishes that a police officer may not use deadly force on an unarmed, nonthreatening suspect, which is precisely what Ragsdale claims he was. *Id.*

That would be the end of this appeal but for one additional wrinkle. Ragsdale claims that we should dismiss this interlocutory appeal for want of jurisdiction rather than affirm the district court's decision. *See Johnson v. Jones*, 515 U.S. 304 (1995). He is correct that, generally speaking, we lack jurisdiction to hear immediate appeals from the denial of qualified immunity that solely contest the other side's account of the facts. *Id.* at 319–20; *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2019 (2014). But two realities give us jurisdiction here. One is our line of precedents giving us jurisdiction over these kinds of appeals if the officer claims that the claimant and district court rely on an account of the incident that is "blatantly" contradicted by the record. *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009). That is precisely what Officer Sidoti is arguing—wrong though he ultimately may be about the merits at this stage of the case. The other is that Officer Sidoti separately makes legal arguments in his brief—that mistakes of fact and law are still entitled to qualified immunity, *see, e.g.,* Appellant's Br. at 35, wrong again though he may ultimately be about the merits at this stage of the case. We thus have jurisdiction over the appeal. *See Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998).

For these reasons, we affirm.