SYKES, Circuit Judge,
dissenting, with whom BAUER, FLAUM, and MANION, Circuit Judges, join.
My colleagues have misread the district judge’s decision and failed to recognize the limits of jurisdictional principle announced in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). To the first point, the judge’s decision denying summary judgment actually contains two rulings. The judge held that (1) the eviden-tiary record reveals genuine factual disputes about whether certain key events occurred; and (2) the defendants are not entitled to qualified immunity because the evidence in the record, when construed in Robert Stinson’s favor, would permit a reasonable jury to find that they violated his right to due process by fabricating evidence used to wrongly convict him, see Whitlock v. Brueggemann, 682 F.3d 567 (7th Cir. 2012), and suppressing evidence of the fabrication, see Brady v. Maryland, 373 U.S. 83, 83 (S.Ct. 1194, 10 L.Ed.2d 215 1963), both of which are clearly established constitutional violations.
The judge’s order does not neatly separate rulings (1) and (2), which I confess makes it more difficult to correctly apply the Johnson principle. But the absence of clean lines in the judge’s reasoning does not make the entire decision unreviewable. Our task is to determine whether the decision below contains a legal ruling about qualified immunity. If it does, then we may review it. Here, there’s no question that the judge’s decision does contain a legal ruling about qualified immunity. For the reasons explained in my opinion for the panel, Johnson does not block jurisdiction over this appeal. Stinson v. Gauger, 799 F.3d 833, 838-40 (7th Cir. 2015).
Johnson must be read in light of Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), and Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). So read, Johnson does not apply and we have jurisdiction to address and decide whether the defendants are entitled to qualified immunity.
Scott and Plumhoff shed some new light on the limits- of the Johnson jurisdictional principle, but my colleagues have misapplied Johnson on its own terms. To recapitulate, it is long-settled law that an order denying an immunity claim is effectively final with respect to the defendant’s right to avoid the burdens of litigation and trial, so appellate jurisdiction arises under 28 U.S.C. § 1291 pursuant to the collateral-order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 524-25, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Johnson announced a limited exception to this general rule. The Supreme Court held that “a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court’s summary judgment order insofar as. that order determines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial.” Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151 (emphasis added).
The “insofar, as” language is important. So is the context of the Court’s opinion. The plaintiff in Johnson sued five police officers alleging that they severely beat him during his arrest, breaking his ribs and requiring hospitalization, and in so doing violated his Fourth Amendment right to be free from unreasonable seizure. Id. at 307, 115 S.Ct. 2151. Three of the officers moved for summary judgment, *530 claiming qualified immunity and arguing that the plaintiff had no evidence that they were actually involved in the beating. Id. at 307-08, 115 S.Ct. 2151. The district court denied the motion, relying on the plaintiffs statement that he was beaten by unidentified officers and the officers’ admissions that they were present during the arrest. The court held that this evidencé raised a genuine factual dispute about whether these particular officers participated in the beating. Id.
Note that this ruling dealt only with a disputed question of historical fact, not the legal question whether the evidence about the circumstances surrounding the beating — assuming the officers participated— would permit a reasonable jury to find that the officers used excessive force and thus violated the plaintiffs Fourth Amendment right to be free from unreasonable seizure. And it was precisely because the district court rested its ruling solely on á dispute about the historical facts that the Supreme Court said the order was not immediately appealable; the order contained no final legal determination about qualified immunity for the appellate court to review. Id. at 313-14, 115 S.Ct. 2151.
Return now to the “insofar as” language, which appears in the Court’s holding at the very end of the opinion. Id. at 319-20, 115 S.Ct. 2151. Just before this closing passage, the Court explained that some qualified-immunity rulings will have both reviewable and unreviewable aspects, and acknowledged that it might sometimes be difficult “to separate an appealed order’s reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is ‘genuine’).” Id. at 319, 115 S.Ct. 2151. After all, á qualified-immunity order is unreviewable only “insofar as” it makes the latter kind' of determination; the former kind of determination is the legal question' at the heart of any qualified-immunity-claim and is immediately appealable under Mitchell notwithstanding the Court’s holding in Johnson. To illustrate the point, the Court “concede[d]” that if the district court “had determined that beating [the plaintiff] .violated clearly established law, [the officers] could have sought review of that determination.” Id. at 318, 115 S.Ct. 2151.
The lesson of this part of the Court’s opinion in Johnson is that a “mixed” qualified-immunity order is immediately reviewable, at least in part. If the district court holds that the summary-judgment record, viewed in the plaintiffs favor, shows a violation of clearly established law — that is, would permit a reasonable jury to find for the plaintiff on his constitutional claim — then the defendant may take an immediate appeal to obtain review of that determination even if the order also identifies a genuine factual dispute.
Scott and Plumhoff bring this important point into sharper focus. As in Johnson, the plaintiffs in Scott and Plumhoff alleged that the police used excessive- force in violation of the Fourth Amendment. Each case involved a high-speed vehicular chase. In Scott an officer rammed the plaintiffs fleeing car during the pursuit, and the excessive-force question ultimately turned on whether a reasonable officer could have believed that the plaintiffs flight posed an actual and imminent threat to public safety, justifying the use of this degree of force. 550 U.S. at 375, 380-84, 127 S.Ct. 1769. The , officer moved for summary judgment based on qualified immunity, but the district court denied the motion, holding that genuine issues of fact required submission of the case to a jury. Id. at 376, 127 S.Ct. 1769. The Eleventh Circuit affirmed. Id.
The Supreme Court reversed, holding that the plaintiffs version of the facts — he *531 claimed that he remained in control of his vehicle throughout the pursuit so his flight was not a threat to public safety — was “blatantly contradicted by the record,” which included a vidéo recording of the chase. Id. at 380, 127 S.Ct. 1769. Applying the summary-judgment standard, the Court addressed “the factual issue whether [the plaintiff] was driving in such fashion as to endanger human life.” Id. at 380-81, 127 S.Ct. 1769. Based on the video recording, the Court held that the plaintiffs flight “posed a substantial and immediate risk of serious physical injury to others” and that “no reasonable jury could conclude otherwise.” Id. at 386, 127 S.Ct. 1769. The Court thus had “little difficulty'’ concluding that “it was reasonable for [the officer] to take the action that he did.” Id. at 384, 127 S.Ct. 1769.
Scott did not mention Johnson, but as I noted in the panel opinion, the Court’s decision “inescapably implies that Johnson should not be read too expansively.” Stinson, 799 F.3d at 839. Indeed, “[t]he Court made this point explicit in Plumhoff, which specifically addressed the limits of Johnson’s no-jurisdiction holding in light of Scott.” Id. Plumhoff was an excessive-force claim against police officers for shooting at a fleeing car. 134 S.Ct. at 2017-18. As in Scott, the district court held that the record on summary judgment revealed a material factual dispute about the level of danger posed by the driver’s flight and on that basis rejected the officers’ claim of qualified immunity. Id. at 2018. The Sixth Circuit initially dismissed the officers’ appeal under Johnson for lack of jurisdiction, but reversed itself in light of Scott and affirmed the district court’s denial of qualified immunity on the merits. Id.
The Supreme Court reversed. The Court first addressed the matter of appellate jurisdiction, noting that the order at issue in Johnson rested entirely on a question of historical fact about which officers participated in the beating. That is, the defendant officers “assert[ed] that they were not present at the time of the alleged beating and had nothing to do with it,” but the district court held that the evidentiary record could “support a contrary finding.” Id. at 2019. An “evidence sufficiency” ruling of that type, the Court explained, “does not present a legal question in the sense in which the term was used in Mitchell, the decision that first held that a pretrial order rejecting a claim of qualified immunity is immediately appealable.” Id.
But the order at issue in Plumhoff, the Court observed, “is nothing like the order in Johnson.” Id. The defendant officers did not claim, for example, “that other officers were responsible for [the] shooting ...; rather, they contended] that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law.” Id. More specifically, the officers acknowledged that they fired shots at the fleeing car but argued that their conduct was a reasonable response to the degree of danger created by the driver’s flight, or alternatively, that a reasonable officer would not have known that the shooting was unjustified in light of that danger. Id. These were “legal issues ... quite different from any purely factual issues that the trial court might confront if the case were tried,” and “deciding legal issues of this sort is a core responsibility of appellate courts.” Id. So Johnson did not apply. Id.
Moving to the' merits, the Court held that the case was materially indistinguishable from Scott. The summary-judgment record established “beyond serious dispute that [the driver’s] flight posed a grave public safety risk, and here, as in Scott, the police acted reasonably in using deadly force to end that risk.” Id. at 2022.
*532 As Scott and Phmhofftaake clear, it’s a mistake to read Johnson as a categorical bar to appellate review of a qualified-immunity order whenever the district court makes an “evidence sufficiency” ruling or concludes that facts are in dispute. If that were the right way to understand Johnson, then the district-court, orders in Scott and. Plumhoff were unreviewable and the Court would not have reached the merits of the qualified-immunity question. As the Court explained in some detail in Plum-hoff, Johnson blocks an immediate appeal only when the district court’s order is limited to pure questions of historical fact — in' other words, when the sole dispute is whether and how certain events or actions occurred. Johnson does not block immediate appeal when the issue is whether the evidence, if credited by a jury, shows a violation of a clearly established constitutional right. That is, after all, the core qualified-immunity question.
Another way to think about the Johnson principle is this: The jurisdictional bar applies if the issues raised on appeal are limited to the “who, what, where, when, and how” of the case. The Johnson bar does not apply if the appeal asks whether the evidence in the summary-judgment record — construed in the plaintiffs favor— would permit a reasonable jury to find that the defendant committed, the claimed constitutional violation and the constitutional right in question was clearly established at the time the defendant acted. ’
Properly understood, then, Johnson’s exception to the Mitchell rule is really quite narrow. That makes sense in this context. Qualified immunity protects public officers from the burdens of litigation and trial; it is immunity from suit, not just protection against liability. Mitchell, 472 U.S. at 526-27, 105 S.Ct. 2806. The parties in § 1983 litigation often disagree about key historical facts, and it’s not uncommon for district judges to deny qualified immunity on both factual and legal grounds. Immunity from suit wouldn’t mean much if these mixed orders were categorically un-reviewable. Indeed, the Court acknowledged in Johnson that many qualified-immunity appeals are of this mixed variety. Johnson, 515 U.S. at 318-19, 115 S.Ct. 2151.
This is one of those mixed cases. The parties dispute two historical facts that the district judge concluded are material to the defendants’ potential liability: (1) whether Dr. Johnson met with the two detectives and showed them his initial sketch of the killer’s dentition before the detectives canvassed the neighborhood and interviewed Stinson; and (2) whether Dr. Johnson or Assistant District Attorney Daniel Blinka contacted Dr. Rawson for a second opinion. If the judge’s order denying summary judgment were limited to the identification of these key factual disputes, we would have no legal issue to review, Johnson would apply, and we’d have to dismiss the appeal for lack of appellate jurisdiction.
But the judge’s order, is not limited to identifying these material-factual disputes. The judge also ruled that if Stinson’s version of these events is credited—namely, if the preinterview meeting occurred and Dr. Johnson rather than ADA Blinka called Dr. Rawson — then a reasonable jury could find, based on these facts and the rest of the evidentiary record (construed in Stin-son’s favor), that the defendants conspired to violate Stinson’s right to due process by delivering up fabricated- odontology opinions and covering up the falsehoods, two clearly established constitutional violations.
This latter aspect of the judge’s summary-judgment order is a final no-immunity ruling; it fully resolved the qualified-immunity question against the.defendants. That’s a legal issue and is subject to imme- *533 diáte review under Mitchell notwithstanding the presence of material factual disputes. If this aspect of the judge’s decision is unreviewable until after trial, then the immunity is completely lost; any mistake in the judge’s legal conclusion goes wholly uncorrected.
Regrettably, by misreading Johnson, Scott, and Plumhoff, my colleagues have stripped the defendants of their right to meaningful review of the judge’s adverse qualified-immunity ruling. That ruling is not unreviewable. Appellate jurisdiction is secure, and we should reverse.
Giving the evidence a Stinson-friendly benefit of the doubt, we must accept the following as true for purposes of deciding whether the defendants are protected by qualified immunity:[1] (1) Dr. Johnson met with the detectives before their field canvas and showed them his preliminary sketch of the killer’s dentition, which depicted a missing upper right lateral incisor (the tooth just to the right of the two front teeth); (2) Dr. Johnson changed his mind about which tooth the killer was missing after the detectives interviewed Stinson and saw that he was missing his right central incisor (that is, his right front tooth); (3) Dr. Johnson’s expert opinion that Stinson’s dentition matched the bite marks on the victim’s body fell far below the professional standards of forensic odontology at the time (this was not a close call, according to Stinson’s expert); (4) Dr. Johnson, not ADA Blinka, called Dr. Rawson to arrange a second opinion; and (5) Dr. Rawson’s opinion was likewise seriously substandard.[2]
Accepting these facts as true establishes only that Drs. Johnson and Rawson were grossly negligent in declaring that Stin-son’s dentition matched the. bite marks on the victim’s body. In other words, their opinions were .objectively unreasonable, and egregiously so. But an error in forensic analysis — even a grossly unprofessional error — is not a due-process violation. Fabricating evidence to convict an innocent person is a clear due-process violation, but a due-process claim based on an allegation that an expert fabricated his opinion requires evidence from which..a reasonable jury could infer that .the opinion was both wrong and that the expert knew it was wrong at the time he gave it. In other *534 words, it requires evidence that the expert was not just badly mistaken but that he lied. So Stinson needed at least some circumstantial evidence to support an inference that Drs. Johnson and Rawson knew that he was not the killer and implicated him anyway.
He has none. The evidence shows only that Drs. Johnson and Rawson were grossly negligent in their opinions and had an opportunity to reach an agreement with Gauger to frame Stinson. A deeply flawed forensic opinion plus evidence of an opportunity to plot a conspiracy is not enough. Stinson has no evidence of what was said in the preinterview meeting between Dr. Johnson and the detectives. He has no evidence of what was said in the phone call between Drs. Johnson and Rawson (assuming it occurred). He has no evidence of any motive on the part of Drs. Johnson or Rawson to falsely implicate Stinson. Why would credentialed forensic experts want to frame him? A jury could only guess. It’s sheer speculation that a conspiracy to frame Stinson was hatched in these conversations and that the experts implemented it by lying to the prosecutor, the John Doe judge, and the judge and jury at trial. No evidence exists to support this theory.
Think of it this way: Would the evidence in this record establish probable cause for a warrant to arrest these defendants for committing perjury in the John Doe proceeding or at trial? Clearly not. A badly botched expert opinion plus a mere opportunity to plot a frame-up does not support probable cause for a perjury charge. Something more would be needed.
On this record, even when construed in Stinson’s favor, no reasonable jury could And that Drs. Johnson and Rawson violated Stinson’s right to due process by fabricating their expert opinions and suppressing evidence of the fabrication. The odontologists are entitled to qualified immunity.
The related claim against Gauger is entirely derivative. Stinson claims that the detective solicited the fabrication and participated in a cover-up. Because no reasonable jury could find that the odontologists fabricated their opinions, Gauger too is entitled to qualified immunity.
I respectfully dissent.

. At several points in the majority opinion, my colleagues say that the district judge "concluded” that certain historical events occurred and "determined” that certain facts exist. See, e.g., Majority Op. at p. 525 ("The district court concluded that viewing the submitted evidence in the light most favorable to Stinson, such a meeting did take place, and that during the pre-interview meeting Johnson showed the detectives a sketch of the assailant’s dentition reflecting a missing tooth to the right of the central incisor.”); id. at p. 526 ("The district court concluded that,' viewing the evidence in the light most favorable to Stinson, Johnson made the first contact with Rawson.”); id. at p. 528 (“The district court determined that taking the facts in Stinson’s favor, ‘Gauger was cognizant of Johnson’s shifting view of which tooth was missing’ and ‘was fully aware’ of the ‘contents of his conversations with Johnson and what he implied in their second meeting, following his and Jackelen’s interview of Stinson,’ namely that Gauger implied a desired result in the expert opinions.”). This phrasing is wrong as a matter of basic summary-judgment methodology and potentially misleading. District judges are not empowered to make "conclusions” or “determinations” of fact at summary judgment. To be fair, the error originates in the decision below. We should not repeat it,

. Stinson’s expert may be qualified to offer an opinion about the deep flaws in the odontolo-gists’ work, but he is not qualified to “opine[ ] that Johnson and Rawson knowingly manipulated the bite mark evidence and Stinson’s dentition to make them appear to match.” Majority Op. at p. 527 (emphasis added). Nothing in the record supports the expert’s ability to know or opine about their state of mind.