**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2234**

ANTWON RAFAEL GALLMON, JR.,

            Plaintiff – Appellee,

v.

ROBERT COOPER,

            Defendant – Appellant,

and

CHARLES W. MORRISON; FOREST ACRES POLICE DEPARTMENT; GENE
SEALY, Individually and in his Official Capacity as Forest Acres Police Department
Chief of Police,

            Defendants.

Appeal from the United States District Court for the District of South Carolina, at
Columbia.  Terry L. Wooten, Senior District Judge.  (3:17-cv-00059-TLW)

Argued:  January 31, 2020                          Decided:  March 3, 2020

Before WILKINSON, AGEE, and THACKER, Circuit Judges.

Dismissed by unpublished per curiam opinion.

David Leon Morrison, MORRISON LAW FIRM, LLC, Columbia, South Carolina, for Appellant. Grahame Ellison Holmes, PETERS MURDAUGH PARKER ELITZROTH & DETRICK, PA, Walterboro, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In the early morning of May 19, 2016, Officer Robert Cooper of the Forest Acres Police Department shot and wounded Antwon Gallmon, Jr., in his car. Gallmon sued Cooper under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free from the use of excessive force. Cooper moved for summary judgment on qualified immunity grounds. The district court denied the motion after identifying a disputed issue of fact—namely, whether Cooper faced a threat to his safety when he shot into Gallmon's car as it passed him. Cooper has taken an interlocutory appeal. Because the district court's decision turns on a genuine issue of material fact, we dismiss the appeal for lack of jurisdiction.

I.

A.

On May 19, 2016, Officer Cooper was on duty in Forest Acres, South Carolina. He was driving a marked Ford SUV. Around 1:30 a.m., Cooper was dispatched to address a noise complaint at the dead-end portion of a residential street. Once at the scene, he found a gold Honda backed into a parking space with a person, later identified as Gallmon, in the front passenger seat. Two other men were walking away from the car. J.A. 31. Sensing trouble, Cooper decided to stop his SUV in the roadway and investigate on foot.

Cooper alleges that he activated his car's blue lights and, with his gun drawn, began to approach the Honda's passenger seat. J.A. 31. As he neared the vehicle, Cooper says he saw Gallmon, who had been "attempting to duck down," climb into the driver's seat. *Id.* At this point, Cooper purportedly directed Gallmon to "put his hands up," but Gallmon

3

refused. *Id.* Gallmon, for his part, avers that he did not see any blue lights—only headlights—and did not know that Cooper was a police officer. *Id.* at 45-46. So, when the armed Cooper approached Gallmon, he became "nervous" and decided to leave. *Id.* at 46. To do so, he put the car in reverse but an unidentified object blocked his path.

A dashboard camera in Cooper's SUV captured the remaining events on video. J.A. 51. Because Gallmon was unable to back up, he pulled forward in an effort to drive around the SUV's passenger side. Meanwhile, Cooper ran alongside the Honda, shining a flashlight at Gallmon and yelling for him to stop. After Gallmon determined that he did not have enough room to clear the SUV on its passenger side, he again put the car in reverse and turned to his left. This maneuver placed the Honda "in front of but parallel to the SUV, facing in the opposite direction, and lined up to pass the SUV on its driver's side." *Id.* at 46. At that point, Cooper stepped in front of the Honda and screamed for Gallmon to stop, else he would shoot. Gallmon, realizing that Cooper was a police officer, raised his right hand from the steering wheel to show that he did not have a weapon. *Id.*

Gallmon then began to move the car forward. On his telling, he "turned the steering wheel to the right to stay as far away as possible" from Cooper, who had "plenty of room" to move away. J.A. 47. Cooper, however, says that he "had nowhere to move" and perceived the Honda to be coming at him. *Id.* at 31-32. Fearing that he would be struck, Cooper made good on his warning. *Id.* He first started firing into the car's front windshield. J.A. 51 at 18:04-18:06. Then, as the car passed him, he continued to shoot into the driver's side door and window. *Id.* at 18:06-18:08. In about three seconds, Cooper fired seven shots. The first bullet went through the car's front windshield but missed Gallmon. The last six

4

entered the driver's side door or window. One such bullet hit and injured Gallmon, who alleges that Cooper's use of force was unwarranted because he "was never in the path of the vehicle or at risk of being struck." J.A. 47.

B.

As relevant here, Gallmon brought a § 1983 action against Cooper in South Carolina state court on November 29, 2016, alleging that Cooper violated the Fourth Amendment by using excessive force to seize him. About a month later, Cooper removed the case to the United States District Court for the District of South Carolina.

On December 21, 2017, Cooper moved for summary judgment, maintaining that he did not use excessive force as a matter of law and that he is protected by qualified immunity regardless. A magistrate judge subsequently recommended dismissing the claim on qualified immunity grounds, on the view that Cooper reasonably could have feared being struck by the Honda when he fired each shot into Gallmon's vehicle. J.A. 70-79.

The district court, on September 17, 2018, declined to adopt the magistrate's recommendation. J.A. 119. The court reasoned that Cooper's first shot through the front windshield was "arguably" constitutional because Gallmon's car was moving toward him. *Id.* at 115. However, it identified an "issue of fact as to Officer Cooper's use of force as [Gallmon's] vehicle passed and whether the threat to his safety had passed at that time." *Id.* at 116. The existence of such a threat, the district court noted, is material to the question of qualified immunity in light of *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005). *Id.* at 115-16. In that case, this court clearly established that "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has

5

been eliminated." *Id.* (quoting *Waterman*, 393 F.3d at 481). Because the district court found the justification for Cooper's use of force as Gallmon's car passed him to be in genuine dispute, it denied summary judgment.

This appeal followed.

## II.

At the outset, we must address whether we have jurisdiction over this appeal. Ordinarily, denials of summary judgment are not immediately appealable. *See* 28 U.S.C. § 1291 (limiting appellate jurisdiction to "final decisions" from the district courts). That said, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' . . . notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This exception, however, is circumscribed: "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order . . . sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-320 (1995).

With this background in mind, we consider Cooper's argument that this court has jurisdiction over his appeal. According to him, the issue presented is purely a question of law—i.e., whether, on the undisputed facts of this case, Cooper's use of force violated clearly established law. On this score, Cooper notes that, although "the [d]istrict [c]ourt found that there is a factual issue," it "did not identify the factual issue." Appellant's Op. Br. at 7. In reality, Cooper adds, the facts are not in dispute because they are captured on an "uncontested video." Appellant's Reply Br. at 2.

We disagree. To begin with, the district court expressly concluded that a genuine

6

"issue of fact" exists as to whether the danger had passed when Cooper fired at the Honda's side door and window, which is material to the question whether qualified immunity should be granted. J.A. 116. That is because, "[w]hen we decided *Waterman*, in 2005, we clearly established that . . . officers violate the Fourth Amendment if they employ deadly force against the driver [of a car] once they are no longer in the car's trajectory." *Williams v. Strickland*, 917 F.3d 763, 770 (4th Cir. 2019).

Here, the trajectory of Gallmon's car is plainly in dispute. Gallmon alleges that "[t]here was no way for the Honda to have hit Defendant Cooper when Defendant Cooper fired the shots from the driver's side of the Honda through the driver's side window and door." Appellee's Br. at 26. Cooper, on the other hand, insists that the "danger ha[d] not passed" at this point because the "car c[ould] still skid, slide, fish-tail or change directions." Appellant's Op. Br. at 28.

What's more, contrary to Cooper's contention, the video from his dashboard camera does not indisputably support his rendition of the facts. In qualified immunity cases, courts "usually" adopt "the plaintiff's version of the facts" at summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, when video evidence "blatantly contradict[s]" or "utterly discredit[s]" the plaintiff's account courts view the evidence in the light depicted by the videotape. *Id.* at 380. After "carefully review[ing] the video" in this case, the district court found no such contradiction and instead determined that the question of the car's trajectory was sufficiently close to send it to the jury. *See* J.A. 115-16. We are not prepared to disrupt that judgment.

III.

7

Because Cooper seeks to appeal from an order setting forth a genuine issue of fact for trial, we must dismiss his appeal for lack of jurisdiction.

DISMISSED