[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13619
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23013-DPG

PLEADRO J. SCOTT,

Plaintiff-Appellee,

versus

R. GOMEZ, C. WESTON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 4, 2019)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Corporal Rolando Gomez and Lieutenant Constantina Weston, employees of the Miami-Dade Department of Corrections and Rehabilitation ("Department") appeal from the district court's denial of summary judgment to them on the grounds of qualified immunity.[1]  The plaintiff in this case, Pleadro Scott, alleged that Gomez and Weston violated the Eighth Amendment by failing to protect him from violence at the hands of other inmates while he was in custody at the Turner Guilford Knight Detention Center, run by the Department.  We conclude that we are without jurisdiction to address the issues raised by Gomez and Weston and dismiss this appeal.

Our jurisdiction under 28 U.S.C. § 1291 is generally limited to "final decisions" of district courts.  For the most part, an order that denies a motion for summary judgment is not a "final decision."  Johnson v. Jones, 515 U.S. 304, 309 (1995).  The collateral order doctrine exempts from this rule orders that deny qualified immunity, because "such orders conclusively determine whether the defendant is entitled to immunity from suit."  Plumhoff v. Rickard, 134 S. Ct. 2012, 2019 (2014).

---

[1] Our references in this opinion to the district court generally refer to rulings of the Magistrate Judge, because the district court adopted the report of the Magistrate Judge without additional substantive comment.

However, as we explained in Koch v. Rugg, "Our jurisdiction to review a denial of qualified immunity depends on the type of issue involved." 221 F.3d 1283, 1295 (11th Cir. 2000). Where there are "legal issues underlying the qualified immunity determination," which is part of the "'core qualified immunity' analysis," we properly exercise jurisdiction over the appeal. Id. (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996)). But where the challenge is only to "sufficiency of the evidence relative to a 'predicate factual element of the underlying constitutional tort,'" we may not exercise jurisdiction. Id. (quoting Dolihite v. Maughon ex rel. Videon, 74 F.3d 1027, 1033 n.3 (11th Cir. 1996)); see also Johnson v. Jones, 515 U.S. at 313. This includes, among other things, whether the district court properly determined "what factual issues are 'genuine'" under Rule 56(c). Johnson, 515 U.S. at 313.

We note at the outset that, because we determine that we are without jurisdiction to hear this case, we need not adjudicate the merits of Scott's claims. Insofar as the nature of his claims is illustrative of Gomez and Weston's appeal, however, we note that the Eighth Amendment imposes duties on prison officials to, inter alia, "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 .S. 517, 526–27 (1984). Specifically, "prison officials have a duty . . . to protect

3

prisoners from violence at the hands of other prisoners." Id. at 833 (quotation omitted).

Accordingly, the key issue in this case—that is, the question on which liability will likely be determined—is whether Gomez and Weston actually took "reasonable measures" to guarantee Scott's safety. Scott's argument is essentially that he warned many Department employees, including Gomez and Weston, about the threat posed to him by fellow inmates at the Detention Center, and that they failed to make the proper notation of his concern on his prison documentation. This failure, he contends, ultimately led to a violent attack from another inmate when he was impermissibly housed with that inmate in a cell. Gomez and Weston dispute this argument on two grounds—first, they argue that the proper notation was made on Scott's documentation, and second, they argue that even if Scott's version of the facts is to be believed, it does not state a viable Eighth Amendment claim.

After unsuccessfully moving to dismiss Scott's claims, Gomez and Weston moved for summary judgment on the grounds of qualified immunity. In ruling on this motion, the district court—through accepting the magistrate judge's report and recommendation—voluminously recounted each party's factual allegations and arguments. It repeatedly noted that the parties differed on what the defendants' conduct was at various points in the underlying chain of events, and concluded,

"Defendants correctly argue that the version of events on which they rely do not support an endangerment claim and warrant summary judgment in their favor based on qualified immunity."  Ultimately, in denying summary judgment to defendants, the district court noted that, "accepting the plaintiff's version of events as true, the defendants violated the plaintiff's clearly established constitutional right."

In their appeal to us, Gomez and Weston frame their argument in two parts. First, they argue that the district court misunderstood the facts—namely, the documents used by the Department and the policies that govern the Department's activities—and therefore made "irrelevant and immaterial" findings of fact. Accordingly, if these factual errors are corrected, they are entitled to summary judgment as a matter of law.  Second, they argue that even if Scott's version of the facts is accepted, they are still entitled to qualified immunity because he fails to state a cognizable violation of the Eighth Amendment.

However, after a careful reading of their briefs, we determine that Gomez and Weston misstate their actual arguments—they solely challenge the factual determinations made by the district court, though they cloak their challenges in the guise of legal issues.  After ostensibly assuming that Scott's version of the facts is true, they purport to raise two legal arguments that are actually backdoor means of relitigating the district court's assumptions of fact.  First, they argue that "the most

5

that [Corporal] Gomez and [Lieutenant] Weston's actions amount to is negligence." Second, they argue that the constitutional violation alleged by Scott was not "clearly established law."

If this were the substance of what they *actually* argued, it is clear that they would be challenging more than the district court's determination of evidentiary sufficiency—they would be challenging the legal conclusions made by the district court, thereby conferring the jurisdiction we need to hear their arguments. But this is not the case. The substance of their actual arguments does not match how they label their arguments. They do not, in fact, take Scott's version of events as true. Instead, they explicitly assume *their version* of a critical disputed fact—that they "made a keep separate notation on [Scott's] safety cell profile prior to the incident in question"—on the basis that Scott did not properly dispute the fact under Rule 56(c).

Rule 56(c) requires that a party "asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Gomez and Weston argue that Scott merely responded to this fact by stating that he was "without knowledge as to weather

6

[sic] Defendant Weston updated any document," and that such a response is inadequate under Rule 56(c).

We disagree with defendants' characterization of Scott's response. As we have repeatedly held, "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). With that in mind, Scott sufficiently articulated the nature of his dispute of that fact. It is true that, as Gomez and Weston note, Scott stated that he was "[w]ithout knowledge" as to whether Weston updated his safety cell profile. However, Scott went on to raise a more specific dispute, which noted that the sheet was inauthentic because "it does not have a seal as being filed in Miami Dade Corrections files, at the time of its filing" and was untrustworthy because it misstated Scott's date of birth. Within a liberally construed pro se filing, this statement is clearly sufficient for Rule 56(c) purposes.

Moreover, Rule 56(e) grants district courts broad discretion when a party fails to properly address another party's assertion of fact. See generally Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment of subdivision (e). One option at the district court's disposal is that it *may* deem that fact undisputed. Fed. R. Civ. P. 56(e)(2). However, the district court here did not consider it undisputed

7

that Gomez and Weston made the "keep separate" notation on Scott's safety profile.

In addition, there was other evidence on the basis of which a jury could conclude that there was no "keep separate" notation on Scott's jail documents at the crucial time on May 15, 2013.  The Magistrate Judge assumed Scott's version of relevant facts, including that Scott complained to the transporting officer on May 15, 2013, about being put in a holding cell with Dean, his attacker, and the officer responded that his jail documents did not reflect the "keep separate" notation.  Moreover, the official response to Scott's grievance about the incident indicated that Scott was not a "keep separate" inmate at the time.  As the Magistrate Judge found, "Plaintiff states that the 'keep separate' notation on his safety cell profile sheet, which defendants allege was attached to the jail card at the time of the incident in this case, was not added until after he filed a grievance about the incident."

In effect, Gomez and Weston say one thing—that they accept Scott's version of relevant events as true—and do another—namely, assume their *own* version of, rather than Scott's version of, a critical disputed fact, and then argue that, on such facts, the district court was legally incorrect.  In so doing, they misstate the law and fail to demonstrate that we may properly exercise jurisdiction over their claims.  As mentioned previously, issues regarding the district court's determination of

8

genuinely disputed issues of material fact are not reviewable by us in isolation.[2]

See Johnson, 515 U.S. at 313.  Holding otherwise would entirely undermine the

purpose of the collateral order doctrine and the exception created for denials of

qualified immunity.

Accordingly, we reject this attempt to manufacture appellate jurisdiction

where it does not exist.  Despite their assertions to the contrary, Gomez and

Weston's appeal of the district court's order is entirely concerned with the

sufficiency of the evidence.  Accordingly, we may not exercise jurisdiction over

this case.  We **DISMISS** this appeal and **REMAND** the case for further

proceedings in the district court.

---

[2] It may well be the case that Scott did not properly dispute Gomez and Weston's statement of facts under Rule 56(c), but we are without jurisdiction to decide that issue at this stage of the proceedings.