**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ART TOBIAS, | No. 20-55845 |
| Plaintiff-Appellee, | D.C. No. 2:17-cv-01076-DSF-AS |
| v. | |
| DANIEL EAST, L.A. School Police Officer, No 959, | MEMORANDUM[*] |
| Defendant-Appellant, | |
| and | |
| CITY OF LOS ANGELES; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted September 28, 2021
Pasadena, California

Before: WARDLAW and COLLINS, Circuit Judges, and SETTLE,[**] District Judge.
Partial Concurrence and Partial Dissent by Judge COLLINS

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Benjamin H. Settle, United States District Judge for the Western District of Washington, sitting by designation.

Officer Daniel East appeals a district court order denying his motion for summary judgment as to Art Tobias's deliberate fabrication claim under 18 U.S.C. § 1983. We reverse and remand with instructions for the district court to apply the correct legal standard on the issue of causation.

1. We do not have jurisdiction to address East's argument that there is insufficient evidence that he intentionally fabricated evidence. We generally lack jurisdiction to review a district court's determination that there is a triable issue of fact on an interlocutory appeal of a denial of qualified immunity. *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013). While under *Jeffers*, "we have jurisdiction to consider whether the district court erred in holding that there is a genuine issue of material fact respecting the motives of [the] defendants," here, we are asked to weigh the sufficiency of the evidence with respect to discrepancies between East's oral and written statements. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam). Doing so is clearly prohibited under *Johnson v. Jones*, 515 U.S. 304 (1995).

2. "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). The qualified immunity

analysis requires us to determine "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because it is integral to our analysis of qualified immunity, we have jurisdiction to review the issue of causation.

3.     The district court erred when it held that causation was satisfied because "East's testimony could have been important to the chain of events in several ways."

> To establish the second element of causation [in a deliberate fabrication claim], the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, *meaning that the injury would not have occurred in the absence of the conduct*; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

*Spencer*, 857 F.3d at 798 (emphasis added) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012)). That East's testimony *could have* contributed to Tobias's deprivation of liberty does not establish but-for causation as required by our decision in *Spencer*. *See also Caldwell v. City & Cnty. Of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) ("To establish causation, [a plaintiff] must raise a triable issue that the fabricated evidence was the cause in fact and proximate cause of his injury.).

3

Accordingly, we **REVERSE** and **REMAND** for the district court to apply the correct legal standard under *Spencer* in the first instance.

FILED

NOV 9 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in section 2 of the memorandum disposition, as well as in all of section 3 except for the final lines reversing and remanding the case. I would not remand this case yet again. We have already previously reversed the district court for failing to apply the correct legal analysis to Defendant Daniel East's claim of qualified immunity, *see Tobias v. East*, 803 F. App'x 93, 95–96 (9th Cir. 2020) (noting that the district court's "brief qualified immunity analysis" was so deficient that it was "not clear whether the district court even analyzed some of the claims asserted against East"), and today we reverse it a second time for again failing to apply the controlling legal standard set forth in our caselaw. But rather than apply that legal standard to the summary judgment record ourselves, the majority instead remands that issue to the district court. That might have made sense if the discrete remaining issue to be resolved were a question of fact that, in the event of a further potential appeal, we would review deferentially. But it is a question of law that we would review de novo, and since the answer is clear, the more efficient course is simply to answer it ourselves and to order East's dismissal from this case. To the extent that the majority declines to do so, I respectfully dissent.

**I**

"Qualified immunity shields federal and state officials from money damages

unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). In resolving an interlocutory appeal from a denial of qualified immunity, we may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Starting with the first prong, I agree with the majority that, in order to establish a violation of his right not to be deprived of liberty based on deliberately fabricated evidence, Tobias had to show causation. *See Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). And I also agree with the majority that, under *Spencer*, Tobias was required to show "but-for causation," *i.e.*, "'that the injury would not have occurred in the absence of the conduct.'" *See* Mem. Dispo. at 3 (quoting *Spencer*, 857 F.3d at 798). That was not the standard that the district court applied, and in that respect, it committed clear legal error.

The next question is whether, under the correct legal standard, a rational jury could conclude from the evidence in the summary judgment record that Tobias had shown but-for causation. That is a legal question that is subject to our de novo review, *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017), and I would decide it rather than remand it. Even construing the evidence in the light most favorable to Tobias, I think it is clear that no reasonable jury could find that East's alleged fabrication was a but-for cause of Tobias's arrest and prosecution.

*See Scott v. Harris*, 550 U.S. 372, 377–78 (2007) (holding that a court reviewing a denial of qualified immunity must, in reviewing whether a constitutional violation occurred, draw all reasonable inferences in favor of the party opposing summary judgment).

As an initial matter, Tobias did not present sufficient evidence from which a rational jury could reasonably conclude that East lied during his interview with the detectives at Berendo Middle School on the afternoon of August 20, 2012, shortly before Tobias's arrest at that school. The interview was recorded, and none of the statements made in it could reasonably be viewed as constituting a deliberate fabrication. Nor has Tobias presented evidence that, in the brief conversations East had with the detectives shortly after that interview and before Tobias's arrest, East conspired with the detectives to prepare a false report. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

To the extent that Tobias has presented a potentially plausible claim that East engaged in deliberate fabrication, it can only be based on the theory that East's subsequent written report assertedly mischaracterizes what East saw and said when, during his August 20 interview with the detectives, he was asked if he could identify a murder suspect depicted in a surveillance video. Specifically, East's written report says that he stated during the interview that he "was fairly

3

sure that the Suspect in the video is Art Tobias," when the recorded interview reflects that East appeared more uncertain about his identification of Tobias as the suspect. The written report also states that the suspect in the video had a distinct "stature which is similar to that of Art Tobias," and a reasonable jury could conclude that this statement is not consistent with East's comments during the recorded interview.

The problem is that the record makes indisputably clear that East prepared and delivered that written report *after* Tobias had (wrongly) confessed during his post-arrest interrogation. Given that Tobias's confession was therefore wholly independent of East's alleged misstatements in his subsequent written report, no reasonable jury could conclude that the asserted embellishments in that report— which allegedly made East's identification of Tobias more certain—were a but-for cause of Tobias's arrest and prosecution. That is, given that Tobias had confessed and that East and others had tentatively identified Tobias from the video, no reasonable jury could conclude that the arrest and prosecution "would not have occurred" in the absence of the two alleged embellishments noted earlier. *Spencer*, 857 F.3d at 798.

There is no need to remand this issue, because the record makes clear that East's report was prepared and delivered after Tobias had confessed. Detectives Motto and Arteaga interviewed East during the course of a single visit to Tobias's

school on August 20, 2012 that culminated in the arrest of Tobias at the school. After interviewing East, the detectives next spoke with a school dean, Roger Negroe, at the school and they then again spoke briefly with East. In his declaration, East stated that during that "short conversation" with the detectives about "possibly preparing a statement about [his] identification" of Tobias, Negroe returned to his office and they then "all proceeded to the front of the school," where Tobias was arrested by the detectives. Meanwhile, East apprehended the student who was with Tobias at that time and transported him to the same Rampart police station as Tobias. Tobias's interrogation began at 5:15 PM, and Tobias (falsely) confessed during the course of that interrogation, which lasted only about 90 minutes. Given that timeline, in which Tobias's arrest occurred immediately after a conversation about preparing the written statement, it is impossible to conclude that East wrote the statement (much less delivered it to the detectives) before Tobias's arrest and confession.

In noting that East might have prepared his statement on August 20, the district court was apparently referring to the fact that East responded affirmatively to a question at his deposition asking whether his written statement "was created the same day or day after [his] meeting with the homicide detectives from Rampart." But to the extent that East might have created the statement on August 20, that is because he also stated at his deposition that he might have prepared the

5

report after he left the Rampart station: he said that he "returned to the school police station," but he did not remember whether he had "written a report" then or had simply "gone end of watch," "[m]eaning that [his] duty was over, so [he] turned in [his] gear and left for the day." If he prepared the statement on August 20, it would have been, at the earliest, during or after Tobias's interrogation.

Moreover, there is no evidentiary basis for concluding that the detectives received East's written statement before Tobias confessed. On the contrary, the police internal records reflect that one of the interrogating detectives sent an email to East requesting written statements from him and Negroe on August 24. East stated at his deposition that he dropped off the statement "within a few days of August 20." In East's declaration, he stated that he actually did not deliver his statement until September 4. Either way, it was days after Tobias's arrest and confession. There is no evidence in the record supporting the view that the statement was prepared and delivered before Tobias's confession.

Because the only potential falsehoods that Tobias sufficiently established on summary judgment were the embellishments in East's subsequent written report, and because the record contains *no evidence* that would support a plausible inference that East prepared that report and delivered it to the deputies before Tobias's confession, it is clear that no reasonable jury could find that East's alleged embellishments in his written report were a but-for cause of any

6

deprivation of Tobias's liberty. Because the answer to this question is clear from the existing record, this court should decide this issue, reverse the denial of qualified immunity to East, and order his dismissal from the case.

**II**

Because I conclude that East should be dismissed from the case on these grounds, I have no occasion to reach the difficult question of whether we have jurisdiction, under *Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001), to address whether the district court correctly concluded that Tobias presented sufficient evidence to support a reasonable inference that East's alleged embellishments were intentional. I express no view on that question, and I therefore do not join section 1 of the majority's decision.

\*   \*   \*

For the foregoing reasons, I respectfully concur in part and dissent in part.

7